STATE of Tennessee, Appellee,

v.

**William T. HAILEY, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 25, 1983.

Permission to Appeal Denied by Supreme Court Aug. 29, 1983.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Nashville, Lawrence Ray Whitley, Dist. Atty. Gen., Springfield, for appellee.

Dent Morriss, Springfield, for appellant.

## OPINION

CORNELIUS, Judge.

William T. Hailey was convicted of second degree murder and was sentenced to life imprisonment at the state penitentiary. He now appeals as of right to this Court and presents six (6) issues for our determination.

In one issue, the appellant seeks dismissal of the indictment against him because of alleged discrimination in the selection of the grand jury foreperson. At a hearing on the motion to dismiss, the appellant presented evidence of county census figures from 1890–1980 and evidence of the race of grand jury forepersons in Robertson County since 1947. The figures indicated that, since 1947, Robertson County has had three white grand jury foremen and three white temporary foremen. No black individual has served as foreperson of the Robertson County grand jury at least since 1947. During this period, the percentage of black citizens in the county had fluctuated from 19.74% in 1940, to 17.91% in 1950, to 21.15% in 1960, to 15.89% in 1970, to 13.39% in 1980.

The trial judge stated for the record that he never considered the race or sex of an individual in selecting a foreperson. Rather, the judge claimed he sought "a fair and conscientious" person for the position. Since he was a resident of Sumner County and was not acquainted with much of the citizenry of Robertson County, the trial judge relied upon the advice and recommendations of others in selecting the foreperson of the Robertson County grand jury. The judge stated further that the present foreman of the *Sumner* County grand jury was black and that one of the four (4) foremen he had appointed since coming to the bench was black.

■ In order to prove a violation of equal protection in the selection of grand jury forepersons, the appellant must first establish a prima facie case of discrimination by satisfying a three-pronged test:

The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied.... Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as [foreman], over a significant period of time.... This method of proof, sometimes called the "rule of exclusion", has been held to be available as a method of proving discrimination in jury selection against a delineated class.... Finally ... a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.

*Rose v. Mitchell,* 443 U.S. 545, 565, 99 S.Ct. 2993, 3005, 61 L.Ed.2d 739 (1979), quoting *Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977).

■ In this case, as in *Rose v. Mitchell,* supra, we may assume that two of the three prongs of the test have been met. As the

Supreme Court of the United States determined in *Rose v. Mitchell,* supra 443 U.S. at 565–566, 99 S.Ct. at 3005, "There is no question ... that [blacks] are members of a group recognizable as a distinct class capable of being singled out for different treatment under the laws ... And ... the Tennessee method of selecting a grand jury foreman is susceptible of abuse."

We believe, however, that the appellant has failed to prove that blacks have been underrepresented as forepersons in comparison to the proportion of blacks in the county population. Although 28 years passed between 1947 (the first year for which Hailey provided evidence of the race of the grand jury foreperson) and 1975 (the year in which the appellant was indicted for this offense), only three individuals were appointed during that period to preside over the Robertson County grand jury.[1] Other cases originating in Tennessee have suggested that such a small number of appointments by the trial courts provides too small a sample to prove the proportional underrepresentation envisioned by the *Castaneda* test.

In *State v. Beal,* 614 S.W.2d 77, 79 (Tenn. Cr.App.1981), this Court found that five (5) grand jury foreperson appointments in five (5) years was too small a statistical sample from which to establish a prima facie case of systematic discrimination. As the Court stated in *Beal,* supra, "Where a disparity may ... be the result of 'chance or accident', a prima facie case has not been proven."

In the federal case of *Freddie Fulton v. Jimmy Harrison,* (W.D.Tenn., opinion filed October 15, 1981), aff'd on November 17, 1982, 708 F.2d 723, by the 6th Cir. Court of Appeals, then District Court Judge Harry W. Wellford examined a claim of racial discrimination in Lauderdale County. Evidence adduced in the case indicated that no black had served as county grand jury foreperson for at least 25 years and that, during that period, only two (2) whites had held

the position. In finding the defendant had not established a prima facie case of discrimination, Judge Wellford quoted from the majority opinion in *Rose v. Mitchell,* supra 443 U.S. at 571, 99 S.Ct. at 3008:

> Given the fact that any foreman was not limited in the number of 2-year terms he could serve, and given the inclination on the part of the judge to reappoint, it is likely that during the period in question only a few persons in actual number served as foremen of the grand jury. If the number was small enough, the disparity between the ratio of Negroes chosen to be foremen to the total number of foremen, and the ratio of Negroes to the total population of the county, might not be "sufficiently large [that] it is unlikely that [this disparity] is due solely to chance or accident.

In *State v. Darold Cannon,* 659 S.W.2d 631 (Tenn.Cr.App.), opinion filed at Jackson, October 28, 1982, perm. to appeal denied January 24, 1983, this Court found that only one (1) appointment of a grand jury foreperson had been made within the applicable time period. Not surprisingly, the sample was determined to be too small to establish a prima facie case of discrimination.

The three (3) appointments of grand jury forepersons in Robertson County since 1947 also do not provide an adequate statistical sample from which to determine the merits of the appellant's claim of discrimination. Based upon even the most favorable demographic data provided by the appellant, random selection of grand jury forepersons should yield only one (1) black foreperson for every five (5) appointed. Since only three (3) forepersons have been appointed during the period covered by the appellant's data, we find that Hailey has failed to establish a prima facie case of racial discrimination.

This decision must not be construed as a condonation of the exclusion of identifiable groups from the judicial process. We hold

---

1. Rule 6, Tenn.R.Crim.P., contains no limit on the number of 2-year terms for which a fore-

person may be reappointed.

only that the evidentiary record before us fails to support the appellant's contention on this issue. As Judge Daughtrey wrote for the Court in *State v. Beal,* supra, at 79–80:

> Although we decline to reverse on the basis of the statistical record in this case, we nevertheless reiterate the implicit holding of *Rose v. Mitchell* to the effect that discrimination in the selection of the grand jury foreman, based on race or membership in other identifiable groups, if proven, will vitiate the return of an otherwise valid indictment and therefore must be assiduously avoided.

█ In another issue, the appellant contends the trial court erred in refusing to compel the State to conduct a polygraph examination of him. We find no error, however, in the trial court's decision in this matter. The principle is well established in Tennessee that the results of a lie detector test are inadmissible in evidence. *Hembree v. State,* 546 S.W.2d 235, 240 (Tenn.Cr.App. 1976). No defendant, whether indigent or non-indigent, can introduce polygraph test results at trial. *Nolan v. State,* 568 S.W.2d 837, 840 (Tenn.Cr.App.1978). The limited utility of such suspect evidence militates against the disbursement of state monies for such a purpose. This issue has no merit.

The appellant also alleges the trial testimony is not sufficient to support the jury's verdict. The State's evidence showed that dispatcher William R. "Red" Keith was at work at the Colonial Cab Company at 11:30 p.m. on March 23, 1975. While talking with Charles Woody, another Colonial employee, Keith, who was known to carry large amounts of money on his person, was approached by a gunman who demanded the men's money. When Keith asked the intruder what he was doing, the robber fired four shots from a chrome-plated pistol. All four shots hit Mr. Keith who died from the wounds.

Mr. Keith's body was removed to the local hospital's emergency room for examination. As the doctor began removing the victim's trousers a .22 caliber bullet fell from Keith's clothing. The bullet was later determined to have been fired from a chrome-plated four-barrel pistol taken from the appellant upon his May 16, 1975 arrest for violation of the liquor laws and possession of marijuana for resale.

Immediately after the shooting, Mr. Woody provided police with a detailed description of the assailant. Although Woody's description varied in later statements and he was unable to identify the appellant as the gunman, he did testify that the gun taken from Hailey was similar to the one he had seen during the shooting. Furthermore, the initial description given by the witness fit the appellant.

Jimmy Reynolds, a Colonial Cab driver, saw the appellant minutes before the shooting walking in the direction of the cab company. Approximately one month before that date, Reynolds had been driving Deanie Hunter in his cab when Hunter observed the appellant walking down the street. Hunter directed Reynolds to stop and Hailey entered the vehicle and began conversing with Hunter. Eventually, the two passengers spoke of robbing "Red" Keith. The appellant exhibited a four-shot pistol which could be used in the crime and Hunter proclaimed, "If you have to, shoot him."

The appellant presented an alibi defense, claiming he had not visited the cab company on the date in question. Hailey insisted he had spent the evening at an after-hours club and then walked by his mother's home on his way to spend the night with his girlfriend. The appellant denied shooting the victim and claimed he bought the confiscated gun *after* "Red" Keith had been murdered.

█ The jury observed the witnesses at trial and evaluated their credibility. The credibility of alibi witnesses is to be determined exclusively by the jury. *Forbes v. State,* 559 S.W.2d 318, 324 (Tenn.1977). By its verdict, the jury rejected the appellant's account of his activities on March 23, 1975, and accredited the testimony of the State's witnesses. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). On appeal, the State

is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

█ The evidence against the appellant in this case was circumstantial. A crime may be proven, however, wholly by circumstantial evidence. *Duchac v. State,* 505 S.W.2d 237, 241 (Tenn.1973). Appellate courts weigh circumstantial evidence the same way as direct evidence. *State v. Brown,* 551 S.W.2d 329, 331 (Tenn.1977). In circumstantial evidence cases, single facts by themselves may account for little weight, but when all of the facts and circumstances are put together, they may unerringly point the finger of guilt to the defendant to the exclusion of all others beyond a reasonable doubt. *Hicks v. State,* 490 S.W.2d 174, 178 (Tenn.Cr.App.1972).

█ The evidence adduced at the appellant's trial has been closely examined and it is sufficient to justify a rational trier of fact in finding the appellant guilty of second degree murder beyond a reasonable doubt. Rule 13(e), T.R.A.P.; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). This issue has no merit.

The appellant next alleges the trial court erred in allowing Jimmy Reynolds to testify that he heard Deanie Hunter tell the appellant, "If you have to, shoot him." Hailey contends the statement was inadmissible hearsay and that its admission into evidence violated his constitutional right to confront the witnesses against him.

█ Hearsay evidence is testimony in court of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter. D. PAINE, *Tennessee Law of Evidence,* § 47, p. 47, citing McCORMICK § 246 at 584 (2d ed. 1972). The statement allegedly made by Hunter to the appellant is nonhearsay because it is not offered to prove the truth of the matter asserted therein.

In fact, the sentence "If you have to, shoot him," cannot be true or false, but rather, merely offers advice regarding future conduct.

Even if an assertion is implied in the sentence, we do not believe the testimony is inadmissible. If the statement is construed to imply, "You will rob the victim and, if trouble results, you will shoot the victim," the testimony must be considered a statement of intention of *future* conduct. Such statements have long been held admissible as evidence that the defendant acted in conformity with the stated intention. *See, Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 295–296, 12 S.Ct. 909, 912–13, 36 L.Ed. 706 (1892).

█ Furthermore, we find no abrogation of the appellant's right of confrontation in this matter. Deanie Hunter, the out-of-court declarant, was present at trial and was available for examination concerning the statement attributed to him. The appellant actually called Hunter as a witness and elicited from him a denial that he had made or heard the damaging statement. This issue has no merit.

█ In his next issue, the appellant contends the trial judge improperly commented on the evidence by stating at the conclusion of the testimony of a defense witness, Samuel Douglas, "We're not interested in editorials. Let's get him off the stand and send him back where he belongs." The appellant has cited no authority in support of his position; therefore, this issue is waived. Rule 27(a)(7), T.R.A.P.; *State v. Scott,* 626 S.W.2d 25, 28 (Tenn.Cr.App.1981).

█ In any event, the appellant has failed to demonstrate prejudice from the statement. The witness had completed his testimony and had begun theorizing about the motives of the police in arresting him. The trial judge attempted to prevent introduction of the irrelevant information by ordering the defense attorney to "go on with something else."

The trial judge erred in making the potentially prejudicial statement. The error was clearly harmless, however. The wit-

ness had previously testified he was an inmate at the state penitentiary. Any inferences which the jury might have drawn from the comment had already been presented to them by the defense's examination of the witness. This issue has no merit.

The appellant's final issue alleges error in the trial judge's refusal to allow two jurors to testify concerning allegedly extraneous information mentioned during the jury's deliberation. The jurors would have testified that undue pressure to convict was exerted upon them by other jurors and that at least one juror commented that "the defendant has been tried and convicted of murder once before and he shouldn't have a second chance."

In *Montgomery v. State,* 556 S.W.2d 559, 561–562 (Tenn.Cr.App.1977), this Court found that the rule in Tennessee on juror impeachment of a verdict is identical to Federal Rule of Evidence 606(b). Rule 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about what he would be precluded from testifying be received for these purposes.

█ The juror's testimony concerning pressure exerted by *other* jurors was properly excluded by the trial judge. Only *"outside* influences" improperly brought to bear upon a juror are proper bases for impeaching a verdict.

█ The appellant also contends, however, that a juror's reference to Hailey's first trial constituted "extraneous prejudicial information" which the jury should not have heard. We disagree. Although such a result was not intended, the jury *was* informed throughout the trial that the appellant had actually been tried previously for the murder of "Red" Keith. For example, during the direct examination of Ms. Ann Stroud, the following exchange between the defense counsel and witness occurred:

Q. Mrs. Stroud, also in the February, 1976 term, Mr. Hailey came on to be tried the first time in this case, did he not, his first hearing?

A. Repeat the question.

Q. Mr. Hailey's trial, the first hearing in this case, was also in the February term, 1976.

Since such evidence was placed before the jury by the defense counsel, we cannot conclude that the information regarding a prior trial was "extraneous". The trial judge properly refused to allow the jurors to impeach their verdict on the stated bases. This issue is without merit.

All issues raised by the appellant are meritless. The judgment of the trial court is, therefore, affirmed.

DUNCAN and TATUM, JJ., concur.