IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2003

## STATE OF TENNESSEE v. MICHAEL JOSEPH COOK

**Appeal from the Circuit Court for Obion County**
**No. 2-113     William B. Acree, Jr., Judge**

_____

**No. W2002-01924-CCA-R3-CD  - Filed June 27, 2003**

_____

The defendant, Michael Joseph Cook, was convicted of manufacturing a Schedule II controlled substance and conspiracy to manufacture a Schedule II controlled substance, Class C and D felonies. The trial court merged the conspiracy conviction into the Class C felony and imposed a four-year community based alternative sentence. As a part of the sentence, the defendant was ordered to serve one year in jail. In this appeal of right, the defendant contends that the evidence was insufficient and that his sentence is excessive. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Didi Christie, Brownsville, Tennessee (on appeal), and William Randolph, Assistant District Public Defender (at trial), for the appellant, Michael Joseph Cook.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams III, Assistant Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In early 2002, Officer Matt Woods of the Obion County Sheriff's Department, Kent Treece, and Shawn Palmer, all of whom were members of the Twenty-Seventh Judicial District Drug Task Force, had found evidence of methamphetamine production in a wooded area known as Junk Pile Hill just outside the Samburg city limits. On February 5 of that year, the three officers went to the area and discovered Shane Glisson crouching near the front of a truck and the defendant walking in the direction of the truck. The officers smelled a strong odor of ether, an ingredient required for the manufacture of methamphetamine, and approximately six feet from the truck, observed a "pill soak," a closed one-gallon glass jar containing some of the ingredients necessary for the production of methamphetamine. At trial, one officer testified that anhydrous ammonia, a component used in the

production of the illegal drug, may have already been poured into the "pill soak." A short distance from the truck was an empty container that, according to the officers, smelled like anhydrous ammonia. There were also empty boxes of suphedrine, a base ingredient of methamphetamine, at the scene. A duffel bag, which lay beneath a discarded couch located near the truck, contained ether, pliers, "liquid fire," coffee filters, tubing, glass jars, and lithium batteries, all of which are commonly used in the manufacture of methamphetamine. Hidden underneath the front bumper of the vehicle was a baggie containing processed methamphetamine. The defendant, who was the owner of the truck, and Glisson claimed to the officers that they had driven to the site to repair the engine.

Special Agent Brian Lee Eaton, a forensic scientist with the TBI, performed an analysis on the baggie confiscated by the officers. The substance contained .6 grams of methamphetamine, a Schedule II drug.

Shane Glisson, who had pled guilty to manufacturing methamphetamine as a part of a plea agreement with the state, testified for the defense. Glisson claimed ownership of the methamphetamine found under the defendant's bumper and, despite his prior plea, contended that neither he nor the defendant were manufacturing methamphetamine at the time of their arrest. Glisson testified that he and the defendant had simply traveled to the location in order for him to use methamphetamine that was already in his possession and that the remaining items found at the scene did not belong to them.

The defendant claimed that he had driven to the wooded area so that Shane Glisson could "do a line" of methamphetamine. He explained that he parked near a couch and "down where they dumped a bunch of stuff." The defendant testified that when the officers arrived he "popped the hood" on his truck at Glisson's suggestion and began to check the oil in an effort to demonstrate their good intentions. It was the defendant's contention that he had inadvertently parked near the "pill soak" and a duffel bag which contained "all kind of stuff." He denied any knowledge of the "pill soak" and insisted that there was no methamphetamine odor in the area until officers opened the jar.

As a part of rebuttal, Officer Treece testified that the "pill soak" was a one-gallon jar with a metal lid. He stated that the jar was not opened at the time of the defendant's arrest and that it would not have been safe to have done so.

I

Initially, the defendant claims that the evidence was insufficient because there was "no direct evidence" that he was actually manufacturing methamphetamine in the presence of the officers. He points out that he was not the owner of the property, that the site was often used as a dumping area by the general public, and that no anhydrous ammonia was found in his possession.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v.

State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

A criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 456-58 (1958); State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983). The facts and circumstances must "be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). The weight of the circumstantial evidence is for the jury to determine. Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974) (citing Patterson v. State, 4 Tenn. Crim. App. 657, 475 S.W.2d 201 (1971)). The same standard of review is applicable whether the guilty verdict was based upon direct evidence or upon circumstantial evidence. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895, 897 (1971). The court may not substitute its inferences for those drawn by the trier of fact in circumstantial evidence cases. Liakas, 286 S.W.2d at 859; Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978).

Tennessee Code Annotated section 39-17-417(a)(1) provides that "[i]t is an offense for a defendant to knowingly . . . [m]anufacture a controlled substance[.]" At Tennessee Code Annotated section 39-11-302(b), "knowing" is defined as referring to "a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist;" that section also provides that a "person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tennessee Code Annotated section 39-17-402(14) provides as follows:

> "Manufacture" means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that "manufacture" does not include the preparation or compounding of a controlled substance by an individual for the individual's own use . . . .

A defendant may be "criminally responsible" for an offense committed by another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of

the offense, the defendant solicits, directs, aids or attempts to aid another person to commit the offense. Tenn. Code Ann. § 39-11-402(2).

The evidence established that all the ingredients necessary to manufacture methamphetamine, with the exception of anhydrous ammonia, were found in the immediate area of the defendant's vehicle, which was parked in a remote area away from the road. Packaging for suphedrine was near the truck. A "pill soak," which had been recently placed there, likely contained anhydrous ammonia and included the crushed suphedrine tablets. An empty receptacle smelled like ammonia. Within 10 feet of the passenger's side of the truck was a duffel bag containing methamphetamine lab materials. A baggie of processed methamphetamine was hidden underneath the front bumper of the vehicle.

In our view, the jury acted within its prerogative in determining that the circumstantial evidence was sufficient to establish that the defendant was guilty of manufacturing methamphetamine. Glisson admitted that he had pled guilty to the charge. The defendant had driven Glisson to the remote location. The circumstances offered by the state satisfactorily excluded all "reasonable hypotheses save the guilt of the defendant." Crawford, 470 S.W.2d at 612.

II

Next, the defendant argues that the trial court erred by failing to impose the minimum possible sentence and by ordering split confinement followed by a period of probation. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. If the trial court's findings of fact are adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code

Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range, as appropriate, by any weight assigned to the mitigating factors present. Id.

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b) (Supp. 2000).

Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). The nature and circumstances of the offenses may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983).

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following offenders are eligible for community corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (3) Persons who are convicted of nonviolent felony offenses;
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and

> Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

> However, subpart (c) creates a "special needs" category of eligibility:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of a chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c). To be eligible for community corrections under subpart(c), the defendant must first be eligible for probation under Tennessee Code Annotated section 40-35-303. State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989).

In Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these. 823 S.W.2d at 171; see also State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). "[E]ach case must be bottomed upon its own facts." Taylor, 744 S.W.2d at 922. "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers." Ashby, 823 S.W.2d at 171.

The presentence investigation established that the defendant, now 32 years old, had two prior convictions of driving under the influence of an intoxicant. As a juvenile, he served a period of probation for burglary and larceny. He admitted to consistent use of marijuana for approximately eight years and occasional use for five years, ending in 2001. The defendant acknowledged that he used cocaine on a weekly basis for 10 years, but stated that he had discontinued use of the drug in 2000. While he dropped out of high school, the defendant later earned a Graduate Equivalent Diploma. Unmarried and with no children, he reported that he had worked at eight different jobs between 1989 and 2001, only one of which lasted as long as three years.

After considering the evidence at trial, the presentence report, and the arguments of counsel, the trial court found two enhancement factors: a prior history of criminal behavior and a juvenile offense which would have been a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114 (1), (20) (1997). There were no mitigating factors. Because the defendant had two prior convictions for driving under the influence and was on probation for one at the time of this offense, the trial court also concluded that measures less restrictive than confinement had previously been applied to the defendant and were largely unsuccessful. It further ruled that these factors, when combined with the defendant's prior history of drug abuse, had overcome the presumption for alternative sentencing. Because of the presence of two enhancement factors and no mitigating

factors, the trial court, considering a possible range of between three and six years as provided by Tennessee Code Annotated section 40-35-112(a)(3), determined that a sentence of one year above the minimum was appropriate. The trial court nevertheless afforded some leniency by imposing a sentence of one year in the county jail followed by three years of community corrections. That qualifies as an alternative sentence. In our view, the record supports the ruling of the trial court.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE