IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1996 SESSION

FILED

April 3, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 03-C-01-9508-CC-00226 |
| | ) | |
| | ) | Sevier County |
| v. | ) | |
| | ) | Ben W. Hooper, II, Judge |
| | ) | |
| | ) | (Second Degree Murder and |
| | ) | Theft over $1,000) |
| ROGER STEPHEN SMITH, | ) | |
| | ) | |
| APPELLANT. | ) | |

FOR THE APPELLANT:

David W. Webb
Attorney at Law
140A Court Avenue
Sevierville, TN 37862

Ronald R. Reagan
Attorney at Law
140A Court Avenue
Sevierville, TN 37862

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

William D. Bridgers
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Alfred C. Schmutzer, Jr.
District Attorney General
125 Court Avenue, Room 301-E
Sevierville, TN 37862

Stephen R. Hawkins
Assistant District Attorney General
125 Court Avenue, Room 301-E
Sevierville, TN 37862

OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Roger Stephen Smith, was convicted of murder in the second degree, a Class A felony, and theft over $1,000, a Class D felony, by a jury of his peers. The trial court, finding the appellant was a standard offender, imposed the following Range I sentences: confinement for twenty (20) years in the Department of Correction for the offense of murder in the second degree and confinement for four (4) years in the Department of Correction for theft over $1,000. In this Court, the appellant contends the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact he was guilty of the two offenses beyond a reasonable doubt. He further contends the sentences imposed by the trial court are excessive. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court the judgment of the trial court should be affirmed.

Larry S. Huskey, the victim, lived in a trailer his mother obtained for him. The trailer was located in a trailer park in rural Sevier County. The record establishes the victim was on parole when the offenses in question occurred. The record further establishes the victim was engaged in the sale of illicit narcotics. This was his livelihood.

When the victim and his wife separated, the victim invited the appellant to live in his trailer. The appellant was a tattoo expert, and was adding another tattoo to the victim's body. He also assisted the victim in the trafficking of illicit narcotics.

The victim went to the home of his sister, Gail H. Cole, a few days before his death. He gave Cole an ounce of cocaine and asked her to keep it for him. On Monday, April 18, 1994, he called her, telling her he was going to take a nap. When he awoke, he was to call her, and she was going to visit him at his trailer. The appellant never called Cole.

On Monday afternoon, the appellant went to Cole's residence. The appellant was driving the victim's truck. He told Cole he had purchased the truck from the victim. He also told Cole the victim became intoxicated Sunday night and cut his arm from his wrist to his elbow. The chair and sofa in the living room of the trailer had been cut and the fabric torn from the cushions. The appellant further related the victim had gone to a "strip joint" and he would not be at the trailer that night. He asked for and received the ounce of cocaine

2

Cole was holding for the victim.

On Tuesday, April 19, 1994, the appellant went to the home of the Kantzes, friends of his. That night he went to the home of the Greggs, borrowed a book, and placed two axes in a shed maintained by Mr. Gregg. He spent the night at the Kantz residence. He was described by the Greggs as being laid-back, happy, and carefree. He did not appear to be afraid, scared, or terrorized.

On Wednesday, April 20, 1994, the appellant went to Knoxville, made purchases approximating $500, and returned to Sevier County. When he was asked where he had obtained the money, he stated he had obtained it from a loan shark.

Cole, who continually attempted to call the victim, was unable to reach him. On the evening of April 19, 1994, she went to the trailer park. She contacted the owner of the trailer park. The two of them went inside the victim's trailer. They found the contents of the trailer in disarray. The curtains had been removed from the sliding doors, the furniture had been cut and the fabric removed from the cushions; part of the living room carpet had been cut and removed from the trailer, and there was blood on the walls, the television, and the floor in the living room. There was blood on the tattoo machine situated in the appellant's bedroom. Cole discovered the victim's wallet, $2,000, and the victim's jewelry were also missing.

The Sevier County Sheriff's Department began looking for the appellant. He was located through a relative. He gave the officers a statement. He told the officer the same factual scenario he told Cole. He advised the officers he did not know where the victim had gone or why he had not returned. The officers asked the appellant not to leave the county as they wanted to talk to him again.

On the evening of Thursday, April 21, 1994, the appellant and the Kantzes went to Myrtle Beach, South Carolina. The appellant drove the Kantzes in the victim's truck. One of the Kantzes looked in the glove compartment of the truck. She found a pair of prescription glasses. She commented the appellant forgot to give the victim his glasses. The appellant advised her the victim would not need the glasses any more.

When the Sevier County officers learned the appellant had gone, they left immediately for Myrtle Beach. When they arrived, the officers contacted the appellant. He

accompanied the officers to the Myrtle Beach Police Department. Initially, the appellant reiterated what he had previously told the officers. Once the officers told the appellant the witnesses did not support his story, the appellant admitted he killed the victim on Monday afternoon at approximately 1:00 P.M. He claimed he killed the victim in self-defense. Supposedly, the victim attacked him with a hatchet and he struck the victim with a machete after the victim had swung. He told the officers where the victim's body could be found. A necklace taken from the victim was being worn by one of the Kantzes. A small black book belonging to the victim was found in the appellant's personal effects.

The officers went to the area of Sevier County where the appellant stated he took the victim's body. They found the body lying in a shallow creek. A piece of carpet was covering the body. The carpet was taken to the trailer. The carpet matched the color of the carpet in the trailer, and it was the same size as the carpet which had been removed from the trailer.

An autopsy revealed a deep cut to the right front of the victim's neck. The cut was six inches long and very deep. It severed the major arteries and veins. It caused the victim to bleed to death. There was another superficial mark, which the pathologist opined was possibly a rebound wound from the fatal wound. The victim also had a cut on his left arm.

I.

The appellant contends the state failed to establish malice, which he contends is an element of murder in the second degree. He also contends he could not be convicted of theft because the victim was dead when the appellant confiscated the victim's personal property for his use.

4

**A.**

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

A criminal offense may be established exclusively by circumstantial evidence. State v. Raines, 882 S.W.2d 376, 380 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. McAfee, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987); State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App.), per. app. denied (Tenn. 1983). However, before an accused can be convicted of a criminal offense based on circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant. . . ." State v. Crawford, 225 Tenn. 478, 482,

5

470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 225 Tenn. at 484, 470 S.W.2d at 613.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

## B.

The offense of murder in the second degree is defined by statute as the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Before an accused can be convicted of murder in the second degree, the state must prove beyond a reasonable doubt (a) there was a killing, (b) the killing was done knowingly, and (c) the killing was unlawful. Tenn. Code Ann. §§ 39-13-201(a) and 210(a)(1). Contrary to the appellant's argument, malice is not an element of murder in the second degree.

The appellant admitted he struck the victim with a machete. The autopsy revealed there was a six inch cut, and the cut was deep. It severed the major arteries and veins located in the neck. The victim literally bled to death. While the appellant gave statements to the police and others he killed the victim in self-defense, it is obvious the jury did not believe the statements given by the appellant.

The appellant disposed of the victim's body. He placed the body in a place where it could not be found. He hid the axes which he claimed the victim used when he attacked the appellant. However, he left the murder weapon in the trailer under a sofa. The appellant was described as carefree, laid-back, and happy shortly after the murder. He did not appear to be nervous or terrified. In fact, he returned to the trailer to obtain his clothing

6

with a friend.

The witnesses testified as to the untruths the appellant told them. He lied to the victim's sister and the police officers. He left Sevier County and traveled to South Carolina after the officers asked him to stay in Sevier County so they could talk to him.

There is sufficient direct and circumstantial evidence to support a finding by a rational trier of fact that the appellant was guilty of murder in the second degree beyond a reasonable doubt. Tenn. R. App. P. 13(e).

## C.

Before an accused can be convicted of theft, the state must prove beyond a reasonable doubt (a) the accused knowingly, (b) obtained or exercised control over the property of another, (c) with the intent to deprive the owner of the property, and (d) without the owner's effective consent. Tenn. Code Ann. § 39-14-103. In this case, the indictment alleged the property taken by the appellant was owned by the victim or his heirs. See State v. Leslie Huel Smith, Davidson County No. 01-C-01-9504-CR-00120 (Tenn. Crim. App., Nashville, September 13, 1996), per. app. denied (Tenn. 1997).

The appellant took the victim's wallet, his jewelry, approximately $2,000, and the victim's pickup truck. He converted these assets to his personal use. He drove the truck, gave jewelry to a friend, and spent large sums of money. The victim's small black book was found in the appellant's possession. He also obtained an ounce of cocaine from the victim's sister. When asked where he obtained the large sum of money in his possession, the appellant stated he borrowed the money from a loan shark.

The evidence contained in the record is sufficient to support a finding by a rational trier of fact that the appellant was guilty of theft over $1,000 beyond a reasonable doubt. Tenn. R. App. P. 13(e).

## II.

This Court has conducted a de novo review pursuant to Tenn. Code Ann. § 40-35-

401(d) to determine whether the sentences imposed are excessive. This Court concludes the sentences imposed by the trial court are not excessive.

The appellant's involvement with illicit narcotics and assisting the victim in the trafficking of illicit narcotics are established by the record. This constitutes criminal behavior within the meaning of Tenn. Code Ann. § 40-35-114(1). The appellant used a weapon to kill the victim. This was not an element of the offense. Thus, enhancement factor (9) is applicable in this case. Tenn. Code Ann. § 40-35-114(9). The trial court correctly found the appellant violated a private trust by stealing the property. Tenn. Code Ann. § 40-35-114(15).

The circumstances of the offense, the disposition of the appellant after killing the victim, namely, being carefree, laid-back, and happy, deceiving the victim's sister and the deputy sheriffs investigating the crime, and the disposal of the victim's body coupled with the enhancement factors support the sentences imposed by the trial court.

_____
JOE B. JONES, PRESIDING JUDGE


CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
DAVID G. HAYES, JUDGE

8