IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 8, 2026

## STATE OF TENNESSEE v. CORDERO KLEIN BLAKE

**Appeal from the Circuit Court for Henderson County
No. 24-228-3 Kyle C. Atkins, Judge**

_____

**No. W2025-00797-CCA-R3-CD**

_____

A Henderson County jury convicted the Defendant, Cordero Klein Blake, of driving while under the influence ("DUI") of marijuana, first offense, possession of a handgun while under the influence, driving on a suspended license, speeding, violation of registration law, and violation of financial responsibility law. The trial court imposed a total effective sentence of eleven months and twenty-nine days, suspended to community corrections supervision following service of seven days in confinement. On appeal, the Defendant contends that the evidence is insufficient to sustain his convictions for DUI and possession of a handgun while under the influence. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JOHN W. CAMPBELL, SR., JJ., joined.

Raven Prean-Morris, Assistant Public Defender - Appellate Division, Franklin, Tennessee, for the appellant, Cordero Klein Blake.

Jonathan Skrmetti, Attorney General and Reporter; Julia A. Johnson, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Tyler F. Buckley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case stems from Trooper Jonathan Donald Baxter's May 4, 2024 traffic stop of the Defendant's vehicle due to speeding and erratic driving. When the officer approached the Defendant's car, the strong odor of marijuana emanated from the Defendant and the vehicle. The trooper administered field sobriety tasks and observed impairment. The

trooper arrested the Defendant for DUI and then searched the Defendant's vehicle and found a gun, rolling papers, and a baggie with marijuana residue. Based on this, a Henderson County grand jury indicted the Defendant for DUI, first offense, possession of a handgun while under the influence of a controlled substance, driving on a suspended license, violation of registration law, and violation of financial responsibility law.

At trial, the parties presented the following evidence: Tennessee Highway Patrol ("THP") Trooper Baxter testified that he was parked beneath an overpass on I-40 to monitor the speed of the traffic traveling westbound. He observed a vehicle approaching at a high rate of speed, checked his radar to confirm that the vehicle was speeding, and confirmed the vehicle was traveling ninety-two miles per hour in a seventy mile per hour zone. Trooper Baxter activated his blue lights and initiated a traffic stop. Upon closing in on the vehicle, the vehicle veered abruptly from the left, fast lane to the slow, right lane in front of a semi-truck. The driver veered in front of the semi-truck within a relatively short distance, causing the semi-truck to drastically slow by "[s]lamm[ing] on his brakes." Trooper Baxter also observed what appeared to be a plastic bag coming out of the passenger side of the vehicle. The suspect vehicle sped off the next exit, which was for Parker's Crossroads. By this point, the semi-truck had regulated its speed enough to allow the trooper to safely move over in front of the truck and follow the vehicle off the exit.

Trooper Baxter confirmed that he wore a body camera during his interaction with the driver, whom he identified as the Defendant, and that his state vehicle was installed with a dash camera. He identified the recordings taken from both the dash camera and his body camera. The videos were played for the jury. The recording is consistent with Trooper Baxter's testimony about the traffic stop.

After the Defendant stopped his vehicle, Trooper Baxter approached and noticed that the vehicle license plate was not properly secured. As he neared the driver's door, he immediately smelled a strong odor of marijuana coming from the vehicle. The Defendant appeared "a little bit dazed." The Defendant confirmed that he had a driver's license in his pocket but made no movement to retrieve it until Trooper Baxter asked him, "Can you get your driver's license?" Trooper Baxter then followed up by asking if the license was valid because, in his experience, drivers will delay if they do not have a valid license. The Defendant gave a contradictory response, saying that his license was valid but suspended. The Defendant ultimately provided the officer his license. Due to the Defendant's demeanor and the odor of marijuana, Trooper Baxter suspected some type of impairment.

As Trooper Baxter stood by the driver's window, he noticed "rolling papers" in the vehicle, which he knew to often be used to roll marijuana joints. He also observed that the Defendant's eyes were red, so he asked the Defendant if he had smoked marijuana or if there was marijuana in the vehicle. The Defendant denied possession of or any use of

2

marijuana. Trooper Baxter returned to his state vehicle and provided dispatch with the Defendant's driver's license information, confirming that the Defendant's license was suspended. Trooper Baxter also checked the license tag number and was advised that the license plate was not on file. The Defendant explained to Trooper Baxter that he had removed the license plate from another vehicle because his vehicle was not yet registered. Further, the Defendant did not provide proof of insurance for the vehicle.

Trooper Baxter recalled that Sergeant Tyler Milam arrived and assisted at the scene and that two other troopers were searching the interstate for the bag that he had observed coming from the Defendant's vehicle window. The bag was not found.

Trooper Baxter asked the Defendant to step out of the vehicle to perform some standardized field sobriety tasks. He advised the Defendant that he believed that he might be impaired and that he wanted to make sure that the Defendant could operate his motor vehicle safely. The Defendant appeared unsteady as he exited his vehicle. Trooper Baxter patted the Defendant down and asked if the Defendant had any weapons. The Defendant told Trooper Baxter that there was a firearm under the front passenger side seat.

Trooper Baxter testified that the standardized field sobriety tasks consisted of the horizontal gaze nystagmus test, the walk and turn test, and the one-leg stand test. He explained the instructions to the jury, the purpose of each of the tests, and the indicators of impairment associated with each. During the instructional portion of the walk and turn test, the Defendant confused his right foot for his left foot and displayed difficulty maintaining balance. During the actual performance portion of the test, the Defendant displayed multiple "clues" of impairment, including: stepping off the line; missing placing his heel to toe; using arms for balance; incorrect turnaround; failure to count his steps; and taking the wrong number of steps. Out of the eight possible clues of impairment for the walk and turn, the Defendant demonstrated seven. Trooper Baxter stated that the presence of seven "clues" on one test "indicates that there's probably a pretty good level of impairment."

Next, Trooper Baxter administered the one-leg stand. The Defendant displayed all possible "clues" of impairment on this task. The Defendant told Trooper Baxter that he had a rod in his leg due to a gunshot injury, so the Defendant performed the one-leg stand on his unaffected leg. Considering the totality of the circumstances including the initial traffic violations, the stop, his interaction with the Defendant, and the field sobriety tasks, Trooper Baxter believed the Defendant was under the influence of marijuana and not safe to drive. Trooper Baxter arrested the Defendant for DUI and searched the Defendant's vehicle. The firearm, a loaded Glock pistol in the Defendant's vehicle, was secured before the officers searched the vehicle. In the center console area, officers found a bag with marijuana residue, "commonly known as shake," inside the bag.

3

Trooper Baxter advised the Defendant about the Implied Consent law. The Defendant replied that he did not understand, so Trooper Baxter went through the material again, explaining it in "laymen terms." The Defendant would not give Trooper Baxter a definitive answer, saying things like, "I'm not saying yes but I'm not saying no." Because the Defendant would not specifically agree to a blood test, Trooper Baxter interpreted these comments as a refusal to agree to a blood test.

On cross-examination, Trooper Baxter agreed that "[p]otentially" it could be more difficult for someone with a rod in their leg to perform the walk and turn test.

Tennessee Highway Patrol Sergeant Tyler Milam assisted with the traffic stop involving the Defendant. Sergeant Milam confirmed that he could smell the odor of marijuana emanating from the Defendant. He observed Trooper Baxter conducting the walk and turn test and noticed clues of impairment on the walk and turn test. At the time, Sergeant Milam wore a body camera. The State played the recording for the jury. Based upon his observations at the site of the traffic stop, Sergeant Milam formed an opinion that the Defendant was impaired and unsafe to drive. He based this opinion on the odor of marijuana on the Defendant's person and the Defendant's performance on the field sobriety tasks.

After hearing this evidence, the jury convicted the Defendant of DUI, first offense, possession of a handgun while under the influence, driving on a suspended license, violation of registration law, and violation of financial responsibility law. The trial court ordered the Defendant to serve an effective sentence of eleven months and twenty-nine days suspended to community corrections supervision after service of seven days in confinement.

## II. Analysis

On appeal, the Defendant asserts that there was insufficient evidence to support his convictions for DUI and possession of a handgun while under the influence. With respect to his DUI conviction, the Defendant argues that the State failed to prove that the Defendant was unable to safely operate a vehicle. He also asserts that, as to his possession of a handgun while under the influence conviction, the State failed to prove that the Defendant was under the influence of any intoxicant. The State counters that the evidence is sufficient to support both convictions. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a

4

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a

defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

## A. DUI

The Defendant asserts that the evidence is insufficient to sustain his DUI conviction because the State failed to prove that the Defendant was unable to safely operate a vehicle. The State responds that the evidence presented at trial is sufficient to sustain the jury's finding that the Defendant was under the influence. We agree with the State.

Under Tennessee law, to support a conviction for DUI as charged in this case, the State is required to prove, beyond a reasonable doubt, that the Defendant was driving or "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [u]nder the influence of . . . marijuana . . . . ." T.C.A. § 55-10-401(a)(1) (2015); *State v. Butler*, 108 S.W.3d 845 (Tenn. 2003). A criminal offense may be established exclusively by circumstantial evidence. *State v. Raines*, 882 S.W.2d 376, 380 (Tenn. Crim. App. 1994) (citing *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983)). We note that this Court has often found that an arresting officer's testimony alone is sufficient to support a defendant's conviction for DUI. *See, e.g. State v. Vasser*, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).

In the case under submission, elements one and two, that the Defendant was driving a motor vehicle, and on a public road, are uncontroverted. The Defendant contends in his brief that there was insufficient evidence presented to prove element three, that he was under the influence of marijuana. We disagree. Viewing the evidence in the light most favorable to the State, it established that Trooper Baxter observed the Defendant driving at a high rate of speed. When he attempted a traffic stop, the Defendant drove erratically and evasively before ultimately stopping on an off-ramp. Upon approaching the Defendant's car, Trooper Baxter smelled the strong odor of marijuana emanating from the car. The Defendant appeared to be "dazed" when Trooper Baxter requested the Defendant's license. Trooper Baxter also observed that the Defendant's eyes were red and his responses to questions were delayed. After exiting the vehicle, both Trooper Baxter and Sergeant Milam smelled the strong odor of marijuana on the Defendant's person. Trooper Baxter subsequently administered two separate field sobriety tests, neither of which the Defendant completed successfully, showing multiple indicators of impairment. Thereafter, the Defendant was placed under arrest and his vehicle was searched. Officers found a plastic bag with the remnants of marijuana. Moreover, the jury was able to view the Defendant's interactions with Trooper Baxter during multiple video recordings of the stop. We

6

conclude that this evidence is sufficient for a rational trier of fact to find the essential elements of DUI beyond a reasonable doubt.

## B. Possession of a Firearm While Under the Influence of a Drug

The Defendant argues the same with respect to his conviction for possession of a firearm. The State maintains that there is sufficient evidence to sustain this conviction. We agree with the State.

Tennessee Code Annotated, section, 39-17-1321, provides, "it is an offense for a person to possess a handgun while under the influence of alcohol or any controlled substance or controlled substance analogue."

The evidence, viewed in the light most favorable to the State, showed that the Defendant was driving in an unsafe manner. The smell of marijuana emanated from the Defendant and his vehicle. The Defendant told the police that he had a gun in the car. The Defendant's demeanor and his performance on field sobriety tasks indicated impairment. A search of the Defendant's vehicle revealed a gun, rolling papers, and a bag containing marijuana residue. This is sufficient evidence upon which a jury could find that the Defendant possessed a gun while under the influence of marijuana. The Defendant is not entitled to relief.

## III. Conclusion

Upon review, we conclude the evidence was sufficient to support the Defendant's convictions and we affirm the trial court's judgments.

_____s/ _ROBERT W. WEDEMEYER_____
ROBERT W. WEDEMEYER, PRESIDING JUDGE

7