IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2005 Session

## STATE OF TENNESSEE v.  JOHN L. WRIGHT

**Direct Appeal from the Circuit Court from Maury County**
**No. 14083          Robert L. Jones, Judge**

———————————

**No. M2004-02174-CCA-R3-CD - Filed October 7, 2005**

———————————

The Defendant, John L. Wright, was convicted of driving under the influence ("DUI"), fifth offense, and of violating the implied consent law. The Defendant now appeals, contending that: (1) the trial court erred when it denied his motion to suppress statements the Defendant made to the police; (2) the trial court improperly concluded that the Defendant's arrest  was lawful; and (3) the evidence is insufficient to sustain his DUI conviction.  Finding that there exists no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Michael D. Cox (on appeal) and Bobby Sands (at trial) , Columbia, Tennessee, for the Appellant, John L. Wright.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; T. Michel Bottoms, District Attorney General;  Dan Runde, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I.  Facts**

This case arises from the Defendant's conviction for DUI.  The Maury County Grand Jury indicted the Defendant for DUI, fifth offense, and for violating the implied consent law.  At the Defendant's bench trial, the following evidence was presented: Dana Lovell testified that she was employed by the county clerk's office, and, in 2002, she was living at 4010 Park Drive in Columbia, Tennessee.  She said that, around 3:15 a.m. one morning, the Defendant knocked on her door, and,

1

after hearing the knock at her door, she "peeped out" her window and saw a van in her driveway with one of the tires straddling the culvert next to her driveway. Lovell testified that she did not recall if the Defendant was sober, and she was so busy screaming at the Defendant that she did not notice the state of his condition. She did not recall for sure if she told the officers that the Defendant was "drunker than hell."

On cross-examination, Lovell testified that she did not see the Defendant inside his van, and she did not see the Defendant drive the van. On redirect, she said that there was no one else with the Defendant when he knocked on her door. Lovell said that she did not see anyone else in the area who could have driven the van, but she did see a man down the road. She testified that the Defendant did not tell her that anyone else drove the van.

Officer David Roachell, an officer for the Columbia Police Department, testified that, on July 25, 2002, he responded to an accident call, which was called in by someone on Park Drive. Officer Roachell recalled that, when he arrived at Park Drive, he encountered the Defendant standing next to a white vehicle that was "high centered" on a concrete abutment. The officer said that when he saw the Defendant he believed that the Defendant was inebriated past the legal limit. He asked the Defendant to come out to the street, and the Defendant shook his head "no" and walked briskly towards the residence. He and another officer then ushered the Defendant back to the street to talk about the incident. Officer Roachell testified that he noticed that the Defendant had bloodshot eyes, was unsteady on his feet, and was emanating a strong odor of alcohol. On cross-examination, Officer Roachell testified that no accident report was filed as a part of the investigation. He said that the Defendant was standing two feet behind the driver's side door of the white van when the officers arrived.

Officer Paul McCormick, with the Columbia Police Department, testified that, on July 25, 2002, he responded to an accident call around 3:00 a.m. that was called in by someone on Park Drive. He testified that, when he arrived at the residence, he saw the Defendant standing in the driveway, and the Defendant appeared very unsteady on his feet. He testified that the Defendant's van appeared to have hit a brick abutment while turning from Park Drive into the driveway. The officer said that he had been to basic and advanced accident reconstruction schools. On cross-examination, Officer McCormick testified that he and Officer Roachell arrived at the scene at about the same time, and he did not observe the Defendant drive the van. He also did not see the Defendant occupying or in physical control of the van, and he did not advise the Defendant of his Miranda rights at any time. To his recollection, Officer Roachell went into the driveway and ushered the Defendant back into the street.

On redirect examination, Officer McCormick testified that the Defendant was not in custody when he admitted that he was driving the van, rather, the Defendant admitted to driving the van while Officer McCormick was conducting a "kind of on-the-scene" investigation. Officer McCormick testified that he told the Defendant "we need to talk to you [for] a second" as the Defendant walked back to the house, but the officers did not lay their hands on the Defendant at this point. Officer McCormick testified that the Defendant did not voluntarily approach the officers and

engage in conversation. Officer McCormick said that the officers would not have granted the Defendant permission to leave them if the Defendant had asked to leave.

The trial court then played a video tape of the incident, and the video showed that, while the Defendant was walking in between Officer Roachell and Officer McCormick from Lovell's house to the street, the Defendant stated that he had driven his van earlier. Officer McCormick testified that the Defendant and the officers had been walking for approximately sixteen to twenty-one feet off camera when the officers initiated their conversation with the Defendant. Officer McCormick testified that, when the officers made their initial approach towards the Defendant, the Defendant started walking away from the officers.

## II. Analysis

On appeal, the Defendant asserts that:(1) the trial court erred when it denied the Defendant's motion to suppress[1] statements that the Defendant made to police; (2) the trial court improperly concluded that the Defendant's arrest was lawful; and (3) the evidence is insufficient to sustain the Defendant's DUI conviction.

## A. Defendant's Statements

The Defendant first contends that the trial court erred when it denied his motion to suppress statements that the Defendant made to police. Specifically, the Defendant contends that the trial court committed reversible error when it allowed the Defendant's statements that identified the Defendant as the driver of the van because the Defendant had not, at the time of the statement, been given Miranda warnings. The Defendant asserts that he should have been advised of his rights because these statements were made during the course of a custodial interrogation. The State counters that the Defendant was not in custody when he made the statements at issue, and the police were merely investigating the accident when they asked the Defendant who drove the van. When deciding this issue, the trial court held: "[The police] were there to investigate the accident . . . . I think they are allowed some latitude in that investigation to identify the operator of the vehicle." The trial court concluded that the Defendant was seized, within the meaning of the Fifth Amendment, when the police "ushered" the Defendant back to the street. Therefore, the trial court suppressed all statements made by the Defendant after that point, but not before.

The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23; see State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that

---

[1] Normally, suppression issues are presented to the trial court prior to trial. In this case, however, the parties agreed that, because this was a bench trial, the issue could be properly raised during the trial.

may be drawn from that evidence." Odom, 928 S.W.2d at 23. Furthermore, "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).

In Miranda v. Arizona, the United States Supreme Court held that, pursuant to the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination, police officers must advise a defendant of his or her right to remain silent and of his or her right to counsel before they may initiate custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 479 (1966). Miranda warnings are required when a person is subject to custodial interrogation by law enforcement. See id. "Custodial" means that the subject of questioning is in "custody or otherwise deprived of his freedom by the authorities in any significant way." Id. at 478. This Court has expanded this definition of custodial to mean "under the totality of the circumstances, [whether] a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996). To aid in determining whether a reasonable person would consider himself or herself in custody, this Court considers a variety of factors, including the following:

> [T]he time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

Anderson, 937 S.W.2d at 852.

In the case under submission, viewing this matter under the totality of the circumstances, we conclude that a reasonable person in the Defendant's position would not have considered himself deprived of freedom of movement to a degree associated with a formal arrest. The purpose of the officers' questioning was investigative, not interrogative, in nature. They were attempting to investigate an accident scene to which they had been called. The officers did not proceed in a lengthy round of questioning in a hostile setting. Instead, they merely asked the Defendant if he had been driving the van earlier after they told him, "We need to talk to you [for] a second." The officers did not force the Defendant to answer their questions, and Defendant acquiesced to the officers' requests for questions when he stated that he had driven the van earlier. The officers did not restrain the Defendant's freedom of movement during this line of questioning. They did not lay their hands on the Defendant, and they did not tell the Defendant that they would not allow him to leave. We

4

conclude that the evidence does not preponderate against the trial court's finding that the Defendant was not in custody until he was "ushered" to the street by the officers. For the reasons stated above, we conclude that the Defendant's statement that he had driven the van earlier was properly admitted, and that the Defendant is not entitled to relief on this issue.

## B. Defendant's Arrest

The Defendant's second assertion is that the trial court erred in finding that the warrantless arrest of the Defendant was lawful, and that the trial court erred by not granting the motion to suppress based on the unlawful arrest of the Defendant. Specifically, the Defendant argues that the officers could not have established the required probable cause for each element of a DUI offense and that, consequently, the Defendant's arrest did not qualify for the exception to the prohibition of warrantless misdemeanor arrests provided by Tennessee Code Annotated section 40-7-103(a)(6). The State argues that the Defendant's arrest was lawful pursuant to Tennessee Code Annotated section 40-7-103(a)(6) because the officers had probable cause to believe that the Defendant had committed the DUI offense. The trial court held that the Defendant's arrest was lawful pursuant to section 40-7-103(a)(6).

The trial court's findings of fact are "presumptively correct on appeal" and are binding upon this Court unless the evidence in the record preponderates against them. State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn.1997). However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).

Generally, a warrantless arrest for a misdemeanor not committed in an officer's presence violates Tennessee law. State v. Duer, 616 S.W.2d 614, 615 (Tenn. Crim. App. 1981). However, Tennessee Code Annotated section 40-7-103(a)(6), which governs warrantless arrests by police officers, provides in pertinent part as follows:

(a) An officer may, without a warrant, arrest a person: . . . .

(6) At the scene of a traffic accident who is the driver of a vehicle involved in such accident when, based on personal investigation, the officer has probable cause to believe that such person has committed an offense under the provisions of title 55, chapters 8 and 10. The provisions of this subdivision shall not apply to traffic accidents in which no personal injury occurs or property damage is less than one thousand dollars ($1,000) unless the officer has probable cause to believe that the driver of such vehicle has committed an offense under § 55-10-401[.]

5

Tenn. Code Ann. § 40-7-103(a)(6) (2003); <u>see</u> <u>also</u> Tenn. Code Ann. § 40-7-103(a)(8) (2003). Section 55-10-401 prohibits any person from driving or being in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the State while under the influence of a drug or intoxicant. Tenn. Code Ann. § 55-10-401 (2003).

In the case under submission, we conclude that the officers had probable cause to believe that the Defendant was the driver of a vehicle involved in an accident and that the Defendant had committed the accident while in violation of section 55-10-401. The Defendant told the officers that, earlier, he had driven the van, which was involved in an accident with a concrete abutment beside Lovell's driveway. After speaking with the Defendant, the officers noticed that he smelled of alcohol, was unsteady on his feet, and had blood shot eyes. These circumstances provided the officers with probable cause to believe that Defendant had been involved in an accident while he was intoxicated. Therefore, the officer's warrantless arrest of Defendant was lawful and in accordance with section 40-7-103(a)(6), and that the Defendant is not entitled to relief on this issue. Tenn. Code Ann. § 40-7-103(a)(6) (2003).

### C. Sufficiency of Evidence

The Defendant alleges that there is insufficient evidence in the record to support his DUI conviction. Specifically, he alleges that the trial court erred when relying solely on circumstantial evidence to convict him of DUI. He contends that the evidence did not establish that he drove or was in physical control of his van while intoxicated on a public road for the following reasons: (1) there were no eyewitnesses to the Defendant driving or occupying his van while intoxicated; (2) the officers found the Defendant outside the vehicle and the ignition keys were unaccounted for; (3) the engine was not running when the officers found the Defendant next to his van; and (4) the van was immobile due to its position on the concrete abutment besides Lovell's driveway. The State argues that it provided sufficient evidence to sustain the Defendant's DUI conviction for the following reasons: (1) the officers found the Defendant on Park Drive, standing next to his van in an intoxicated state, shortly after they responded to a dispatch call reporting an accident in the area; (2) the Defendant told the officers that he had driven the van earlier; (3) no one was with the Defendant when the officers arrived at the scene; and (4) Lovell testified that no one was with the Defendant when he knocked on her porch door.

The trial court found that:

The Court finds beyond a reasonable doubt that [Defendant] operated his vehicle just moments before he was seen at the front door of the Lovell house and then seen by officers in the driveway of the Lovell property. And that proof convinces the Court beyond a reasonable doubt that he had just operated that vehicle on Park Drive, a public street, while under the influence of an intoxicant and he did not have time to get under the influence between his operating on the public street and the officers discovering him there near the vehicle . . . .

6

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Under Tennessee law, to support a conviction for DUI, the State is required to prove, beyond a reasonable doubt, that the Defendant was driving or "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [u]nder the influence of any intoxicant . . . ." Tenn. Code Ann. § 55-10-401(a)(1) (2004). A criminal offense may be established exclusively by circumstantial evidence. State v. Raines, 882 S.W.2d 376, 380 (Tenn. Crim. App. 1994) (citing State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983)). However, before an accused can be convicted of a criminal offense based on circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant . . . ." Id. (citing State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)). In other words, "A web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. (citing Crawford, 470 S.W.2d at 613).

The Tennessee Supreme Court has adopted a totality of the circumstances test for the purposes of determining whether a person was in physical control of a motor vehicle *or* driving a motor vehicle. State v. Butler, 108 S.W.3d 845, 850 (Tenn. 2003). Such an inquiry is highly factual and *all* circumstances should be taken into consideration by the trier of fact when determining whether the defendant actually drove the vehicle or was in physical control of the vehicle in a particular case. Id. The relevant factors that the trier of fact should take into account include:

[T]he location of the defendant in relation to the vehicle, the whereabouts of the

7

ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993). These factors can be used as circumstantial evidence that the Defendant had been driving the vehicle. Butler, 108 S.W.3d at 850.

In Butler, the Tennessee Supreme Court held that there was sufficient evidence to support a defendant's convictions under section55-10-401(a)(1) because when the defendant was apprehended by a police officer he was intoxicated and "was in reasonable proximity to his motorcycle (one hundred yards) having just removed the spark plug in the parking lot." Id. at 851. The Court noted that the defendant had admitted to driving the motorcycle to Wal-Mart shortly before being arrested. The court concluded that a jury could reasonably find that the defendant had driven to Wal-Mart despite the defendant's contentions that he did not start drinking until after he had exited his motorcycle to shop at Wal-Mart. Id. at 850.

Similarly, in the case at bar, there is sufficient evidence to prove beyond a reasonable doubt that the Defendant drove his vehicle while he was intoxicated. The officers found the Defendant in an intoxicated state standing right next to his van at a residence on Park Drive shortly after they received a dispatch call for an accident that had occurred there. No one was with the Defendant when the officers found him next to his van. The Defendant told the officers that he had driven the van earlier. Therefore, the evidence in the record does not preponderate against the trial court's finding that the Defendant was driving while intoxicated. When considering all the circumstances regarding the Defendant's arrest for a DUI in a light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, that the Defendant drove on a public road while intoxicated. Therefore, we conclude that there is sufficient evidence in the record to sustain Defendant's DUI conviction, and that the Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing, we conclude that the trial court committed no reversible error. Therefore, the judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE