STATE of Tennessee, Appellee,

v.

James W. EAVES, Appellant.

Court of Criminal Appeals of Tennessee,
at Jackson.

Feb. 14, 1997.

Permission to Appeal Denied by
Supreme Court Oct. 13, 1997.

Walker Guinn, Assistant Public Defender
(on Appeal), David Hoglund (at Trial), Mem-
phis (A.C. Wharton, Jr., Shelby County Pub-
lic Defender, of counsel), for appellant.

Charles W. Burson, Attorney General and
Reporter, Susan Rosen, State Counsel, Nash-
ville, Patience Branham, Assistant District
Attorney General, Memphis, for Appellee.

## *OPINION*

WADE, Judge.

The defendant, James W. Eaves, was convicted of aggravated assault. The trial court imposed a Range I, five-year, three-month sentence to be served in the workhouse. The sentence was ordered to be served consecutively to prior sentences for aggravated burglary and contempt of court. A $5,000.00 fine was imposed.

In this appeal of right, the defendant challenges the sufficiency of the evidence and argues that the trial court committed error by warning a defense witness about a possible perjury charge.

We reverse the judgment of the trial court and remand for a new trial.

On August 19, 1994, Marlon Ward, a deputy jailer for Shelby County, observed Mark Winningham, a jail trusty, throw an object into a cell occupied by the defendant. At trial, Deputy Ward testified that he searched the trusty and then went to the defendant's cell to determine what had been thrown; the defendant blocked the cell door and threatened to stick him in the head with a pen if he tried to enter. Deputy Ward recalled that he notified Sergeant Joyce Jones, his supervisor, of the incident and returned to the cell to escort the defendant to her office. When they arrived, the defendant, who had his hands behind his back, placed a writing pen into his pocket. Deputy Ward testified that he took the pen from the defendant's pocket and began to inform the sergeant of the details of the incident when the defendant grabbed the pen, charged the deputy, and "stabbed" him in the hand. The deputy said he then grabbed the defendant by the hair and wrestled and fought him to the floor. When the altercation was stopped, Deputy Ward had a puncture wound in his hand and a knot on his arm where, he claimed, he had blocked other of the defendant's blows with the pen.

Sergeant Jones corroborated Deputy Ward's testimony. She testified that the defendant initiated the altercation by attacking the officer with the pen. She said they wrestled each other to the floor, fought, and that the defendant threw several punches with both hands.

Deputy Jailers Ronnie Davis and Deborah Burns also witnessed the incident. Their testimony at trial corroborated the allegations of Deputy Ward. Ms. Burns recalled that Deputy Ward had used his hand to block the defendant's attack with the pen.

The defendant, who testified that he had a marketing degree and a $35,000.00 a year income before losing his job at Federal Express several years ago, claimed that he had been homeless prior to his incarceration and had experienced declining mental and physical health. The defendant related that he had been diagnosed as manic-depressive and had been under prescription medication while in jail. He described the behavior of Deputy Ward, before their altercation, as abusive: "He did not hurt me, he just would not help me." The defendant claimed that he had possession of a cigarette lighter, which had been declared contraband, and that he had loaned the lighter to curry favor among the inmates who liked to smoke.

The defendant related that trusty Winningham had returned the lighter when Deputy Ward intervened, demanding "that thing that he just gave you." The defendant acknowledged that he initially denied Deputy Ward entry into the cell. The defendant claimed that Deputy Ward left for a short period, returned, and, while "grabbing his [own] genitals" in a threatening manner, backed the defendant against the wall of the cell. The defendant said Deputy Ward "looked nuts" so he left the cell to look for Sergeant Jones with whom he "had a rapport." The defendant acknowledged that he had a pen in his pocket and that Deputy Ward "snatched the pen" away. The defendant contended that when he took his pen back, Deputy Ward attacked him, striking and kicking him and pulling his hair. The defendant testified that he had head lacerations, for which he received treatment, a gash over his eye, and bruised hands, arms, and ribs.

The defendant acknowledged that he had filed a civil suit for damages in the amount of $10 million and punitive damages in the amount of $5 million over the incident. He

admitted that he had at least five misdemeanor convictions for theft between 1990 and 1994. He was convicted of aggravated burglary in August of 1994 and had several other offenses for which he had served jail time since 1984. The defendant claimed that he had committed these crimes to feed himself and that none involved violence.

Mark Winningham, who was serving a term in jail for aggravated assault, testified that he was a trusty at the time of this incident. Winningham testified that he allowed the defendant, who was in protective custody, to keep his cigarette lighter. Winningham, who was strip-searched by Officer Ward just prior to the altercation at issue, testified that the officer's attack on the defendant was unprovoked. He claimed that Officer Ward slammed the defendant to the ground and struck and kicked him in the face.

Terry Williams, an African–American who was serving a sentence for burglary at the time of this incident, testified that Officer Ward, also African–American, was racially biased against whites and had mistreated the defendant. Williams claimed that Officer Ward struck the defendant in the face while the defendant's pen was still in his pocket. He stated that the defendant, who did not fight back, was knocked to the ground and was kicked by the officer. He said that the defendant called for help but that no one intervened.

Williams acknowledged that he had made inconsistent statements about the incident; he had first given a deposition favorable to the defendant in his federal lawsuit against the officers and then recanted that prior to this trial. He testified that his recantation was due to his fear of Officer Ward.

James Turner, who had also been incarcerated at the jail, testified that he had been threatened by Officer Ward who had tried to prevent him from becoming a witness. His testimony generally corroborated the defense theory that Deputy Ward's attack was entirely unprovoked. Turner was cross-examined about whether he had authored a letter to the jail director which indicated a retreat in his support of the defense. Turner denied that he had written the letter which included

a statement that he had been paid $100.00 to testify that he had been jumped by other officers. When the defense objected to a reading of a portion of the letter by the state, the trial court made the following comment in the presence of the jury:

> Well, this witness is looking at two-to-twelve years in the penitentiary for aggravated perjury ... [a]nd if he denies [writing the letter] and the State can later prove that was his signature, [he] can be indicted for aggravated perjury. Do you understand that, sir? Two-to-twelve years in the penitentiary.

> The Witness: I understand it, your Honor.

When further questioned, Turner continued to deny that he had authored or signed the letter, insisting that his trial testimony was truthful. Turner then acknowledged that he had been convicted of several crimes in the past including theft, burglary, and attempted robbery.

Willie Hickman, medical technician at the jail, testified that the defendant had psychiatric problems which required medication. Hickman treated the defendant for two head lacerations about one inch in diameter after the altercation with Officer Ward. The defendant did require some sutures.

■ Initially, the defendant contends that the evidence was sufficient to support only a conviction for simple assault, not one for aggravated assault. The defendant concedes that the proof established he used a weapon but argues that the pen was neither "deadly" nor "potent." He contends that the trial judge, in upholding the verdict for aggravated assault, had no basis to rule that the pen qualified as "capable of causing death or serious bodily injury."

■ On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). The credibility of the witnesses, the weight given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as the trier of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App.1978).

In a criminal action, a conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). A jury verdict, approved by the trial judge, accredits the witnesses for the state and resolves any conflicts in the testimony favorably for the state. *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978).

The statute provides that "[a] person commits an assault who ... [i]ntentionally, knowingly, or recklessly causes bodily injury to another...." Tenn.Code Ann. § 39–13–101(a)(1). The assault is aggravated, a Class C felony, when accompanied by either "serious bodily injury" or the use or display of "a deadly weapon." Tenn.Code Ann. § 39–13–102(a)(1).

The indictment alleges that the assault was aggravated due to the use of a deadly weapon. A deadly weapon includes in its statutory definition "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code Ann. § 39–11–106(a)(5)(B). The term "serious bodily injury" involves a "substantial risk of death; [p]rotracted unconsciousness; [e]xtreme physical pain; [p]rotracted or obvious disfigurement; or [p]rotracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty." Tenn.Code Ann. § 39–11–106(33).

■ The theory of the state, that the defendant initiated the altercation by stabbing a pen in a downward motion towards Deputy Ward's head, was supported by proof. The force of the defendant's assault was sufficient to cause a puncture wound to the hand as the deputy attempted to ward off the blow. A hard plastic BIC or Papermate pen, as the object was described by the witnesses, is capable, in our view, of causing either "extreme pain" or "obvious disfigurement." Had the victim been struck in the eye, the seriousness of the risk is apparent. Objects other than traditional weapons may, depending on their use, be deadly. *E.g., State v. Tate*, 912 S.W.2d 785 (Tenn.Crim.App.1995). The pen, in this case, was used in such a manner. A pillow, a sock, telephone wire, a hairbrush, and a long-handled flashlight have

all been held to constitute deadly weapons because of the manner in which they were used. *See State v. Jerry B. Crow*, No. 01C01–9310–CR–00348 1995 WL 284048 (Tenn.Crim.App., at Nashville, May 11, 1995); *State v. James E. Winston*, No. 01C01–9302–CR–00069 1994 WL 390425 (Tenn.Crim.App., at Nashville, July 28, 1994); *State v. Billy Ratcliffe*, No. 01C01–9103–CC–00068 1992 WL 57589 (Tenn.Crim.App., at Nashville, March 26, 1992). Thus, we hold that the evidence was sufficient to support the conviction for aggravated assault.

■ Next, the defendant argues that the trial judge should not have warned the defense witness, James Turner, of the potential for an aggravated perjury charge in the presence of the jury. Defense counsel failed to make a contemporaneous objection; the state insists that omission constitutes a waiver of the issue for appellate purposes even though the issue was raised in the motion for new trial. Tenn.R.App.P. 36(a); *State v. Jones*, 733 S.W.2d 517 (Tenn.Crim.App.1987). It also contends that the error was harmless. The state makes a credible argument that the admonition was merely a legitimate attempt on the part of the trial court to warn an already incarcerated witness of possible, further jeopardy.

We are persuaded, however, that the trial court should not have made the statement in the presence of the jury. In the context of the trial and particularly because defense witnesses had made inconsistent statements about the incident and had recanted their earlier pronouncements which would have favored the state's version of events, the error may not have had any effect on the trial. This view is buttressed by a subsequent, somewhat curative charge:

> At times during the trial, I have ruled upon the admissibility of evidence. You must not concern yourself with these rulings. Neither by such rulings, these instructions, nor any other remark which I have made, do I mean to indicate any opinion as to the facts or ... to what your verdict should be.

■ Yet errors which affect the fairness and the integrity of the trial should be recti-

fied even when the defense fails to make a contemporaneous objection or fails to include the issue in his motion for new trial. *State v. Wooden,* 658 S.W.2d 553, 559 (Tenn.Crim. App.1983). An error which has affected "the substantial rights of an accused may be noticed at any time...." Tenn.R.Cr.P. 52(b). A "substantial right" is one of fundamental proportions and is constitutional in nature. *See State v. Goins,* 705 S.W.2d 648 (Tenn. 1986); *State v. Brown,* 693 S.W.2d 369 (Tenn. Crim.App.1985). An error that prejudices the judicial process, striking at the "fundamental fairness, honesty, or public reputation of the trial" always warrants some measure of relief. *United States v. Causey,* 834 F.2d 1277 (6th Cir.1987); *see* Tenn.R.App.P. 36(b).

 Remarks by the trial judge as to his opinion on the credibility or lack thereof have been held to be plain error. *See State v. Suttles,* 767 S.W.2d 403, 406 (Tenn.1989). Comments upon the evidence are prohibited by our state constitution. Tenn. Const. art VI, § 9.

The Tennessee Constitution prohibits judges from any comment "with respect to matters of fact...." *Id.* The aims of this provision are to guarantee the reliability of an impartial judge and to preserve for the jury the resolution of the facts. *Leighton v. Henderson,* 220 Tenn. 91, 414 S.W.2d 419 (1967); *Sasser v. Averitt Express, Inc.,* 839 S.W.2d 422 (Tenn.App.1992). A trial judge is obligated to "be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." *Suttles,* 767 S.W.2d at 407. "It is natural that jurors should be anxious to know the mind of the court, and follow it. Therefore, a court cannot be too cautious in his inquiries." *McDonald v. State,* 89 Tenn. 161, 14 S.W. 487, 488 (1890). While the trial court had good cause based upon the inconsistencies of the various statements by defense witnesses to warn of potential perjury charges, those admonitions should have been made outside of the jury's presence in order to preserve the integrity of the trial. While the warnings appear to have been borne of good intentions, their content and timing implicitly

questioned the credibility of witness James Turner.

Accordingly, the judgment of conviction is reversed and the cause is remanded for a new trial.

HAYES and BARKER, JJ., concur.