# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 5, 2002

## STATE OF TENNESSEE v. COLICO WALLS

**Appeal from the Criminal Court for Shelby County**
**Nos. 99-11598, 99-11599    Chris Craft, Judge**

---

**No. W2002-00191-CCA-R3-CD  - Filed March 18, 2003**

---

The defendant, Colico Walls, was convicted of aggravated robbery and aggravated assault. The trial court imposed a Range I sentence of 11 years for the aggravated robbery and a Range II sentence of 10 years for the aggravated assault. The sentences were ordered to be served consecutively. In this appeal of right, the defendant challenges the sufficiency of the evidence. The judgment is affirmed as to the aggravated robbery. The aggravated assault is modified to simple assault, a Class A misdemeanor, having an 11-month, 29-day sentence. The sentences, as modified, shall be served consecutively.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed in Part; Modified in Part**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

A.C. Wharton, Jr., District Public Defender (of counsel on appeal); and W. Mark Ward (on appeal), Brent Walker (at trial), and Michael Johnson (at trial), Assistant District Public Defenders, for the appellant, Colico Walls.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams III, Assistant Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At about 2:00 P.M. on November 13, 1998, Shirley Harmon, an employee at U-Haul International in Memphis whose duties included the collection of rental for trucks, offered to assist the defendant, who had entered the business premises through an employee entrance. According to Harmon, the defendant used the water fountain and then the restroom. Because the defendant acted suspiciously, Ms. Harmon notified David Noel, a U-Haul customer representative, of his presence. When the defendant returned to the store area from the restroom, he asked Noel for an application for employment and left. Later in the evening, after dark, the defendant re-entered the showroom area of the store. When Ms. Harmon asked if she could offer assistance, the defendant, who "had

something that looked like a gun," grabbed Ms. Harmon, pulled her behind the counter, and demanded "all the money, [b]itch," from the cash register and the safe. Ms. Harmon used her code to open the cash register drawer, which contained approximately $1,000.00, and handed him the contents. When the defendant again demanded the money from the safe, Ms. Harmon explained that it contained no money. After Ms. Harmon called for help from "David," the defendant reacted angrily and ultimately ordered her "to get down and to stay down" behind the counter. Ms. Harmon crawled to the stock room and, about five minutes later, called 911 from a cordless phone.

At trial, Ms. Harmon acknowledged that she was not certain that the defendant had a gun, explaining that it "look[ed] a little bit big for a gun." She stated that she had merely assumed the defendant had a weapon because he had threatened "to blow my head off and all this stuff." She recalled that the defendant also took her wallet, which contained her checkbook, some credit cards, her identification, and about $60.00 in cash.

Noel testified that he saw the robbery. After identifying the defendant as the person who had entered the store area earlier in the day, Noel recalled that shortly after dark, he responded when Ms. Harmon "starting screaming [his] name." Noel testified that when he looked around the corner, he saw the defendant holding an object near Ms. Harmon's head threatening to "blow [her] brains out" and demanding money. According to Noel, who was the listed victim in the count of the indictment charging aggravated assault, the defendant shouted, "David, bring your ass out, I've got something for you." Noel stated that the defendant never saw him standing behind the corner. Rather than confronting the defendant, Noel chose to contact the police. At trial, Noel described himself as feeling threatened and scared by the defendant's threat.

Officer Jeffrey Polk, an investigator with the robbery bureau of the Memphis Police Department, developed two photographic lineups for Ms. Harmon, each containing the photographs of five individuals. He testified that Ms. Harmon selected a photograph of the defendant from the second spread, tentatively identifying him as the perpetrator. Noel also selected the defendant from a photographic display.

The defendant was convicted of the aggravated robbery of Ms. Harmon and the aggravated assault of Mr. Noel. While acknowledging the limited scope of review afforded appellate courts, the defendant nevertheless argues that the evidence of identification was insufficient to support either conviction. He asserts that he is six feet, two inches in height, not approximately five feet, five inches as described by Ms. Harmon or approximately five feet, eight inches, as described by Noel. The defendant also argues as to the assault, that the evidence was insufficient to establish that the defendant had either displayed or used a deadly weapon or that the state had sufficiently established that Noel had actually been assaulted.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v.

State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).  Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact.  Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956).  Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict.  State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

A criminal offense may be established exclusively by circumstantial evidence.  Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 456-58 (1958); Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); State v. Hailey, 658 S.W.2d 547, 552 (1983).  The facts and circumstances must "be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant."  State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971).  The weight of the circumstantial evidence is for the jury to determine.  Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974) (citing Patterson v. State, 4 Tenn. Crim. App. 657, 475 S.W.2d 201 (1971)).  The same standard of review for sufficiency claims is applicable to guilt based upon direct as well as circumstantial evidence.  Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895, 897 (1971); State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).  The court may not substitute its inferences for those drawn by the trier of fact in circumstantial evidence cases.  Liakas, 199 Tenn. 298, 286 S.W.2d at 859; Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978).

Both victims made positive in-court identifications of the defendant.  Noel made a positive identification from the photographic spread and Ms. Harmon made a tentative identification.  Each had seen the defendant enter the store earlier in the afternoon before the robbery and had an opportunity to converse with him.  That there was a disparity between the estimates made by the victims and the actual height of the defendant would not be a basis for reversal on the issue of identification.  It was within the province of the jury to resolve such conflicts of testimony in favor of the state.  See State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).  Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear."  Tenn. Code Ann. § 39-13-401(a).  A robbery becomes aggravated either when the victim is seriously injured or when the defendant "display[s] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon."  Tenn. Code Ann. § 39-13-402(a); see Peabody v. State, 556 S.W.2d 547 (Tenn. Crim. App. 1977).  In our view, the evidence of the defendant's guilt was sufficient for the aggravated robbery conviction.

The defendant also argues that the state failed to establish that he actually used a deadly weapon, as opposed to something else, for the purposes of elevating the assault to an aggravated assault.  An assault occurs where, among other things, a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury."  Tenn. Code Ann. § 39-13-101(a).  An assault becomes aggravated when the victim is seriously injured or when the defendant "[u]ses or displays

a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(A)-(B). Unlike aggravated robbery, the weapon utilized in an assault must actually be classified as a deadly weapon for the offense to become aggravated. Tennessee Code Annotated section 39-11-106 defines "deadly weapon" as "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or . . . [a]nything that in the manner of its use or intended use is capable of causing death or bodily injury." Tenn. Code Ann. § 39-11-106(a)(5)(A), (B). Among those items that may, in certain circumstances, be considered "deadly" are hard plastic pens, automobiles, and duct-tape and coat-hanger fortified extension cords. State v. Eaves, 959 S.W.2d 601, 604 (Tenn. Crim. App. 1997); State v. Tate, 912 S.W.2d 785, 788 (Tenn. Crim. App. 1995); State v. Tolliver, No. E2001-00584-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Dec. 18, 2001) perm. app. granted (Tenn., Aug. 5, 2002). Neither fists nor feet qualify as deadly weapons, see State v. Fleming, 19 S.W.3d 195 (Tenn. 2000), but pointed-toe cowboy boots do, see State v. Daryl Lee Madden and Marty Dale Williams, No. M2000-02227-CCA-R3-CD (Tenn. Crim. App., at Nashville, July 19, 2002), for publication.

Neither Ms. Harmon nor Noel could state with certainty that the defendant possessed a gun. As the state argues, however, there was circumstantial evidence that suggested that he was armed with a weapon. As indicated, circumstantial evidence alone may be sufficient. That the defendant threatened to "blow [the] head off" Ms. Harmon in combination with her belief and that of Noel that the defendant might possibly be brandishing a gun, is persuasive. Yet Ms. Harmon testified that the object used by the defendant was larger than a gun. When pressed, she conceded that she did not believe it was a gun, but feared that whatever it was might cause her harm. She indicated that she possibly saw a barrel but no gun. The object never made contact with her body. Noel described the defendant as having "an object in his hand," something he could not otherwise identify. "I did not really get to see what [it] was," he said. The investigation did not yield a weapon of any kind. Of some significance is that the robbery was charged in two counts. The first charged aggravated robbery by an object leading the victim to believe a deadly weapon was involved. The second count alleged robbery with a deadly weapon. Although the offenses were merged into the greater of the two verdicts, the jury found only simple robbery on the second count. Circumstantial evidence is sufficient only if it proves each of the elements beyond a reasonable doubt. Here, the proof offered by the state was not, in our view, legally sufficient to establish the use of a deadly weapon within the meaning of our aggravated assault statute.

The defendant also argues that the evidence was insufficient to establish that Noel was a victim of an assault. An assault is complete when one "intentionally or knowingly" causes another to "reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a). While the defendant argues that State v. Payne, 7 S.W.3d 25, 29 (Tenn. 1999), would preclude a conviction for aggravated assault due to the failure to establish a fear of imminent bodily injury, this court disagrees. The holding in Payne is distinguishable. Here, the victim Noel heard threats made towards Ms. Harmon, saw what he believed to be a weapon, and backed away from the defendant's invitation for him to intervene. The defendant uttered a threat and appeared to have an object capable of backing it up. In consequence, Noel had a reasonable fear of imminent bodily injury. See generally State v. Moore, 77 S.W.3d 132 (Tenn. 2002).

Accordingly, the conviction for aggravated robbery is affirmed. The aggravated assault conviction is modified to simple assault, a Class A misdemeanor. The 11-month, 29-day sentence shall be served at 75% and shall be served consecutively to the sentence for aggravated robbery.

_____
GARY R. WADE, PRESIDING JUDGE