IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. JOHN LIDDELL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-04007    Joseph B. Dailey, Judge**

_____

**No.  W2005-00780-CCA-R3-CD  - Filed October 9, 2006**

_____

Following a jury trial, Defendant, John Liddell, was convicted of two counts of theft of property valued at $500 or less, a Class A misdemeanor; one count of the aggravated assault of Robert Bolinger, a Class C felony; and one count of the aggravated assault of Cheffie Hurt, a Class C felony. The trial court sentenced Defendant to concurrent sentences of thirteen years as a Range III, persistent offender for each felony conviction, and eleven months, twenty-nine days for each misdemeanor conviction, for an effective sentence of thirteen years. Defendant does not appeal the length of his sentences or the sufficiency of the evidence supporting his theft convictions. In his appeal, Defendant argues that the evidence is insufficient to support his two convictions of aggravated assault. After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender; Tony N. Brayton, Assistant Public Defender; Jennifer Johnson, Assistant Public Defender; and Kathy Kent, Assistant Public Defender, Memphis, Tennessee, for the appellant, John Liddell.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William L. Gibbons, District Attorney General; Stephen Jones, Assistant District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

## I.  Background

On February 3, 2003, Bula McGee fell asleep as she waited for her appointment at the Veterans Affairs Medical Center in Memphis. When she woke up, her pocketbook, which had been hanging on the bars of her walker, was missing. Ms. McGee testified that her pocketbook was

subsequently recovered, and her driver's license and military identification were found in a trash can in one of the medical center's bathrooms. Ms. McGee said that the only item from her pocketbook which was not recovered was her coin purse.

William Thomas Davis, the Chief of Police at the Veterans Affairs Medical Center, testified that Sergeant Cheffie Hurt had worked in his department for twenty years until he retired due to illness. Chief Davis visited Sergeant Hurt two weeks prior to trial. He stated that Sergeant Hurt, who was in the last stages of terminal cancer, was under hospice care and unable to leave his home. Based on Chief Davis' testimony, the trial court declared Sergeant Hurt unavailable as a witness pursuant to Rule 804(4) of the Tennessee Rules of Evidence. Sergeant Hurt's taped testimony at Defendant's preliminary hearing was therefore played to the jury.

Sergeant Hurt saw Defendant exit the medical center's retail facility around 10:30 a.m. on February 3, 2003. Sergeant Hurt said that he knew Defendant from prior interactions. Defendant was carrying a woman's black pocketbook and a shopping bag. Because Sergeant Hurt had earlier received a report of a stolen pocketbook, he asked Defendant to stop, but Defendant ran down the hall. Sergeant Hurt pursued Defendant for awhile but became winded. He asked Robert Lloyd Bolinger, a medical center employee, to follow Defendant. Sergeant Hurt said that he caught up with Mr. Bolinger and Defendant as Defendant was emerging from a restroom. Defendant waived a knife-like box cutter at Mr. Bolinger and said that he was not going back to jail. Mr. Bolinger struggled with Defendant, and Defendant dropped the box cutter and ran away.

Sergeant Hurt said that he and Mr. Bolinger caught up with Defendant a short time later, and Defendant had armed himself with a second box cutter with a three-inch blade. Defendant came toward Sergeant Hurt with the weapon, repeating that he did not want to go back to jail. Sergeant Hurt said that he was unarmed so he threw his radio at Defendant and hit Defendant in the head. Larry D. Gipson, an officer with the medical center's security office, arrived at the scene and drew his gun. At this point, Defendant dropped his weapon.

Sergeant Hurt said that Ms. McGee's black pocketbook was discovered in the restroom from which Defendant exited prior to his confrontation with Mr. Bolinger. Sergeant Hurt said that Defendant was still carrying the shopping bag when he was apprehended. The bag contained ten baseball caps and a belt. A subsequent search of Defendant following his arrest revealed five packages of Hanes underwear concealed underneath his coat. Sergeant Hurt said that all of the items carried the retail center's price tags.

Tawana Lashun Johnson testified that she was sitting at the desk in the hospital's reception area around 10:00 a.m. on February 3, 2003. Ms. Johnson testified that a man ran by the desk, followed by Sergeant Hurt and another man. Ms. Johnson identified Defendant at trial as the man who was pursued. Ms. Johnson said that Defendant pulled out a weapon of some type, and waved it at Sergeant Hurt. Sergeant Hurt asked him to put his weapon down. Defendant said that he did not want to go back to jail. Sergeant Hurt threw his radio at Defendant and hit him in the head.

Defendant ran down a dead-end hallway. Another police officer arrived and drew his gun. Defendant dropped his weapon and said that he did not want to cause any trouble.

Mr. Bolinger testified that he was on his way to his assigned job site when Defendant and Sergeant Hurt ran past him. Sergeant Hurt was out-of-breath and asked Mr. Bolinger to help him catch Defendant. Mr. Bolinger said that he immediately began to pursue Defendant but lost sight of him at a hallway intersection. Mr. Bolinger said that Defendant was carrying a sack of items.

Mr. Bolinger proceeded to the end of the hallway and then doubled back. Mr. Bolinger said that Defendant rushed out of a woman's restroom with a black knife in his hand. Mr. Bolinger said that he and Defendant were both startled. Defendant thrust the knife at Mr. Bolinger. Mr. Bolinger said he perceived Defendant's actions as a threat that Defendant would stab him if he did not step aside. Mr. Bolinger kicked Defendant in the arm, the knife fell to the floor, and Defendant ran down the hallway. Sergeant Hurt caught up with Mr. Bolinger, and the two men followed Defendant to the hospital's reception area.

Mr. Bolinger said that Defendant was brandishing a second knife when he and Sergeant Hurt reached the reception area. Sergeant Hurt threw his radio at Defendant and hit him in the side of the head. Mr. Bolinger said that Defendant threw down his weapon when he was cornered at the end of a dead-end hallway.

Officer Gipson responded to Sergeant Hurt's radioed call for assistance. Officer Gipson said that when he reached the reception area, Sergeant Hurt warned him that Defendant had a knife. Officer Gipson drew his gun, and Defendant dropped the knife. Officer Gipson said that Defendant was then handcuffed and taken to the squad room in the hospital.

Defendant testified on his own behalf. Defendant acknowledged that he was at the Veterans Affairs Medical Center on February 3, 2003, and that he stole some baseball caps and underwear at the medical center's retail store. Defendant said he was walking down a hall with the merchandise when the elevators opened and a man yelled at him and started coming toward him. Defendant said the man did not have on a police or security uniform and did not identify himself.

Defendant said that he ran down several hallways until he grew tired. He stopped in a women's restroom to rest. Defendant said he "peeped out" in a few minutes and did not see anyone, so he exited the restroom. Defendant said he had taken about five steps when Sergeant Hurt came around the corner and said, "There he is right there." Defendant said he started to put his hands on the wall when Sergeant Hurt grabbed him by the hair and knocked his head on the wall "a couple of times." Defendant said he just "snapped" and pulled out the box cutter. Defendant said he tried to find a way out of the medical center but was unsuccessful. Defendant said that Sergeant Hurt threw his radio and hit him on the head. Defendant dropped the box cutter and the shopping bag on the floor when a second officer appeared on the scene and drew his gun. Defendant acknowledged that the officers also found several packages of underwear underneath his coat when he was searched

after his arrest. Defendant stated that he did not feel he was guilty of the charged offenses, and said "[Sergeant] Hurt made me do what I did."

On cross-examination, Defendant acknowledged that Sergeant Hurt knew who he was because Sergeant Hurt had arrested him before at the Veterans Affairs Medical Center. Defendant said that he had two box cutters in his pocket because he had been helping his nephew lay carpet. Defendant acknowledged that he had approximately twenty-nine prior theft convictions. Defendant said he was trying to get away from the pursuing officers when he drew his box cutter.

## II. Sufficiency of the Evidence

Defendant contends that the evidence is insufficient to support his two convictions of aggravated assault. When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

"A person commits aggravated assault who . . . intentionally or knowingly commits an assault . . . and . . . uses or displays a deadly weapon." T.C.A. §39-13-102(a)(1)(B). "A person commits assault who . . . intentionally or knowingly causes another to reasonably fear imminent bodily injury." *Id*. § 39-13-101(a)(2). A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 39-11-106(a)(5)(B).

Viewing the evidence in a light most favorable to the State, Mr. Bolinger testified that he nearly collided with Defendant when Defendant ran out of the women's restroom. Mr. Bolinger said that Defendant was armed with a "sliding blade knife," with the blade extended. Mr. Bolinger said that he and Defendant were about three feet apart, and Defendant thrust the knife at him in an aggressive manner. Mr. Bolinger said that Defendant was trying to get past him, and Mr. Bolinger believed that if he did not move out of the way, Defendant would stab him.

Sergeant Hurt testified that the second time he and Mr. Bolinger caught up with Defendant, Defendant came toward him with a box cutter with a three inch blade, saying that he was not going

back to jail. Sergeant Hurt said that he was unarmed so he threw his radio at Defendant to stop his progress. Sergeant Hurt said that he perceived Defendant's actions as a threat.

Based on the facts and circumstances presented in this case, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant was guilty of aggravated assault against Sergeant Hurt and Mr. Bolinger by using or displaying a deadly weapon, to wit, a box cutter. *See State v. Eaves*, 959 S.W.2d 601, 604 (Tenn. Crim. App. 1997). Defendant is not entitled to relief on this issue.

## CONCLUSION

Accordingly, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE