IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2015


**PATRICK TRAWICK v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 0208616, 0208617     James M. Lammey, Judge**

_____

**No. W2014-01454-CCA-R3-ECN  -  Filed August 12, 2015**

_____

Petitioner, Patrick Trawick, was convicted of first degree murder and two counts of aggravated assault and was sentenced to life in prison without the possibility of parole plus six years.  After denial of his direct appeal and his petition for post-conviction relief, he filed the instant petition for writ of error coram nobis alleging that an eyewitness's recanting of his identification of petitioner constituted newly discovered evidence that entitled him to relief.  The coram nobis court dismissed the petition, and this appeal follows.  Upon review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Robert Brooks, Memphis, Tennessee, for the Appellant, Patrick Trawick.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Jessica Banti, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

**A. Trial**

In 2008, petitioner was convicted by a Shelby County jury of one count of premeditated first degree murder and two counts of aggravated assault related to the death of his estranged girlfriend and the aggravated assault of her companion, Darryl Turner. *State v. Patrick Trawick*, No. W2008-02675-CCA-R3-CD, 2010 WL 2349188, at *1 (Tenn. Crim. App. June 9, 2010), *perm. app. denied* (Tenn. Nov. 18, 2010). The jury sentenced him to life without the possibility of parole for the premeditated first degree murder count, and the trial court imposed concurrent six-year sentences for the two aggravated assault counts to be served consecutively to the sentence of life without the possibility of parole. *Id.* His convictions were affirmed by this court on direct appeal, and our supreme court denied discretionary review. *Id.*

At petitioner's trial, Darryl Turner testified that he and Tujauna Smith, the deceased victim and petitioner's ex-girlfriend, began dating four to six weeks before her death on September 30, 2002. *Id.* He had met petitioner in prison in 1999, and they became reacquainted upon Mr. Turner's release. *Id.* Petitioner was unhappy with Mr. Turner's relationship with the victim; Mr. Turner offered to stop seeing the victim, but petitioner assured him it was unnecessary. *Id.* On the day preceding the victim's death, petitioner visited the home of Mr. Turner's mother and confronted the victim about her failure to bring their thirteen-month-old daughter to see him. *Id.*

On September 30, 2002, the victim picked up Mr. Turner at his mother's house to go out to dinner. *Id.* Soon thereafter, petitioner pulled up next to the victim's car to try to talk to her. *Id.* Although Mr. Turner urged the victim to find out what petitioner wanted, the victim told Mr. Turner that it appeared that petitioner was reaching for a gun so she sped away. *Id.* The victim drove away "frantically," and when she stopped, petitioner shot at them. *Id.* Mr. Turner instructed the victim to drive toward the North Precinct of the Memphis Police Department. *Id.* The victim sped toward the precinct, and petitioner continued his pursuit. *Id.* The victim hit a curb, at which time Mr. Turner jumped out of the car and ran through the woods toward the precinct. *Id.* Mr. Turner saw the victim drive past him with petitioner still following her. *Id.*

About ten minutes after Mr. Turner's arrival at the precinct, an officer informed him that there had been a shooting at a nearby gas station and that the victim had been killed. *Id.* at *2. After giving a statement, Mr. Turner identified petitioner from a photographic line-up as the man who had chased and shot at them. *Id.* Several months later, while both men were in jail, petitioner informed Mr. Turner that he had never

-2-

intended to harm Mr. Turner but that his problem had been with the victim. *Id.* Petitioner also asked Mr. Turner not to testify against him. *Id.*

Raymond E. Williamson testified that he was an assistant manager at the gas station where the victim was killed. *Id.* He recalled seeing two cars pull up outside the store and observed a man and a woman in an argument. *Id.* He said that the victim appeared frightened and moved her hands in a defensive gesture and that petitioner appeared "agitated." *Id.* The victim entered the store, and petitioner followed her with a gun in his hand. *Id.* At the front of the store, petitioner grabbed the victim and "pistol-whipped" her. *Id.* Petitioner instructed the victim to "get the f*** out of the store." *Id.* Mr. Williamson pushed the panic button to alert the police when the confrontation became physical. *Id.* The victim broke away from the petitioner and ran to the back of the store, but petitioner caught up to her and shot her six or seven times. *Id.* Petitioner then ran from the store. *Id.* Mr. Williamson supplied the police with the surveillance tapes from the store, and he identified petitioner at trial as the shooter. *Id.*

Other witnesses, including Rodney Middlebrook, Torrance Holmes, and Rodarius Ellis observed the arrival of the victim's and petitioner's vehicles, their argument, and the assault and shooting inside the gas station. Memphis Police Department Officers Patrick Taylor and Steven Ford, Sergeant Connie Justice, Technician Francis Donald Carpenter, and Tennessee Bureau of Investigation firearms technician Alex Brodhag testified about their investigations and findings. *Id.* at *3-4. Dr. O'Brian Cleary Smith, Shelby County Medical Examiner, performed the autopsy on the victim and determined that she had suffered four gunshot wounds. *Id.* at *4. One bullet entered at the top of her head and traveled at an angle to rest in her brain, which would have resulted in instant death. *Id.* A second bullet entered near her right shoulder, severed her spinal cord and came to rest in her chest cavity, which would have proven fatal eventually. *Id.* A third bullet entered her right shoulder and exited her back, while a fourth bullet entered the front of her right leg and exited the back of her leg. *Id.* Dr. Smith was unable to determine the order in which the wounds were inflicted.

B. Procedural History

Petitioner filed a timely petition for post-conviction relief alleging ineffective assistance of counsel. The post-conviction court denied relief, and this court affirmed the post-conviction court's judgment on direct appeal. *Patrick Trawick v. State*, No. W2011-02670-CCA-R3-PC, 2012 WL 3792095, at *1 (Tenn. Crim. App. Aug. 31, 2012).

Subsequently, petitioner, through counsel, filed a petition for writ of error coram nobis alleging newly discovered evidence in the form of an affidavit from Darryl Turner,

a.k.a. Darryl Coleman,[1] purporting to equivocate his eyewitness identification of petitioner as the driver of the vehicle and the individual who had fired a weapon at the victim and him. In the affidavit, Mr. Turner alleged that he was approached by investigators for the State seeking his cooperation in building the case against petitioner but that he declined because he "really wasn't sure if [petitioner] was the gunman in this case." He alleged that he was later approached by his attorney with information that if he identified petitioner as the shooter, the prosecutor would negotiate a more lenient plea on Mr. Turner's outstanding drug charges. As such, Mr. Turner identified petitioner although he claimed he "really could not see and identify the driver of" the small white car that engaged them in a high-speed chase.

The State argued that the petition failed to allege how the newly discovered evidence may have resulted in a different outcome because: (1) other witnesses identified petitioner as the shooter; (2) surveillance tapes captured petitioner's actions; and (3) Mr. Turner identified petitioner as the shooter immediately following the event. Thus, according to the State, Mr. Turner's equivocation of his identification of petitioner does not equate to petitioner's actual innocence.

## C. Error Coram Nobis Hearing

At the beginning of the coram nobis hearing, petitioner's counsel informed the court that Mr. Turner requested an additional thirty days to "consider his position." The court replied, "[W]e've continued this several times, plus I don't know what there is to consider." The State interjected, "Aggravated perjury charges." The court answered, "I understand that, and I'm sure he's had plenty of time to think about that." The coram nobis court continued, "I don't care if he needs thirty days. He should have had plenty of time to think about this . . . . [W]e've put it off enough . . . . If he wants to testify that he lied under oath or some other thing like that, that's fine with me." After consulting with an assistant district public defender, Mr. Turner exercised his Fifth Amendment right against self-incrimination and declined to testify. Upon consideration of the State's motion to dismiss, the court stated:

> I think it's well taken. I will state, also, that after having reviewed the Court of Criminal Appeals decision, refreshing my memory of the facts of this case, I don't believe had he testified . . . it would have made any difference. I think the proof was overwhelming . . . . [T]here was a video . . . . . I think it was in color, and I thought it had pretty good clarity, and it was severely troubling. So, I don't think it would have made any difference had

[1] The affidavit is executed under the name "Darryl Coleman." However, to minimize confusion and maintain consistency with the facts from the direct appeal, we will continue to refer to him as Darryl Turner.

he even testified at all during the trial. It just wouldn't make any difference – his change of testimony had he elected to testify that he wished to change his testimony.

Accordingly, the coram nobis court dismissed the petition, and this appeal follows.

## II. Analysis

On appeal, petitioner argues that the coram nobis court and the State "threatened and intimidated [Mr. Turner] by declaring their belief that [he] was lying and [by] threatening prosecution." Petitioner claims that the court and prosecutor "drove the witness from the stand, thus ensuring the failure of . . . petitioner's meritorious claims." The State responds that the coram nobis court properly dismissed the petition. We agree with the State.

In support of his position, petitioner cites case law in which trial courts and prosecutors have levied the threat of prosecution for perjury over a witness during trial by repeatedly and plainly accusing witnesses of lying under oath. *See, e.g., State v. Schafer*, 973 S.W.2d 269, 276 (Tenn. Crim. App. 1997) (finding plain error when the trial court accused the witness no less than five times of lying under oath and trying to help the defendant). However, a court should warn a witness of potential perjury charges when there is good cause to do so based upon the inconsistencies of various statements. *See State v. Eaves*, 959 S.W.2d 601, 605 (Tenn. Crim. App. 1997); *see also Schafer*, 973 S.W.2d at 276 (stating that the trial court did not err by instructing the witness about the significance of his oath to testify truthfully).

As noted above, Mr. Turner did not testify at the coram nobis hearing. However, we cannot conclude that the prosecutor or the coram nobis court is to blame for his decision. The transcript from the coram nobis hearing makes clear that the matter had been continued more than once and that Mr. Turner's indecision had been mounting for some time. He requested additional time to consider "his position." When the trial court asked what remained to be considered, the State answered, "Aggravated perjury charges." The only other comment to that end by the coram nobis court was when the court stated that Mr. Turner would be allowed to testify that he lied under oath if he wished. That statement was not a threat or intimidation of Mr. Turner; it was, in fact, a realistic summation of what Mr. Turner would be doing if he chose to testify in accordance with his affidavit. His testimony at trial was very clear that petitioner was the driver and the shooter who engaged him and the victim in a high-speed car chase, and his affidavit equivocated that position. After consultation with an attorney, Mr. Turner reconsidered his position and declined to testify. We find no error attributable to the coram nobis court or the prosecutor in Mr. Turner's failure to testify.

Even if Mr. Turner had chosen to testify at the coram nobis hearing, the court properly denied the petition. The decision to grant or deny a petition for writ of error coram nobis on its merits is left to the sound discretion of the trial court. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)). The writ of error coram nobis is an "extraordinary procedural remedy . . . into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Our legislature has limited the relief available through the writ:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b). To demonstrate he is entitled to coram nobis relief, petitioner must clear several procedural hurdles.

First, the petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004) (citing *State v. Hart*, 911 S.W.2d 371, 374-75 (Tenn. Crim. App. 1995)). The record reflects that petitioner complied with the initial requirements in his petition for relief.

Next, a petition for writ of error coram nobis must generally be filed within one year after the judgment becomes final. Tenn. Code Ann. § 27-7-103. When a petition is filed outside of the statute of limitations, the coram nobis court must determine whether due process requires tolling. *Harris*, 301 S.W.3d at 145. However, the State did not raise this issue in its brief. The State has the burden of raising untimeliness as an affirmative

defense. *Harris v. State*, 102 S.W.3d 587, 593 (Tenn. 2007). Thus, we will next determine whether petitioner has alleged a basis for relief.

In resolving this issue, the coram nobis court noted that Mr. Turner was not the only eyewitness to the crime. There were several other eyewitnesses to the chase and appellant's shooting of the victim, including an assistant store manager and three other individuals. In addition, a video surveillance tape depicting the murder was shown to the jury. Mr. Turner identified petitioner from a line-up immediately following the murder. The coram nobis court correctly observed that had Mr. Turner testified at trial consistently with the "newly discovered evidence," he would have been impeached by his prior inconsistent statement in which he identified the petitioner as the shooter. Even if Mr. Turner had testified as he indicated in his affidavit, it is clear that error coram nobis relief would not have been proper. Accordingly, the coram nobis court did not abuse its discretion in dismissing the petition.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and the applicable legal authorities, we affirm the judgment of the coram nobis court.

_____
ROGER A. PAGE, JUDGE