IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 5, 2019

**STATE OF TENNESSEE v. DEDDRICK CLAY**

**Appeal from the Criminal Court for Shelby County**
**No. 15-01597      Lee V. Coffee, Judge**

_____

**No. W2018-01716-CCA-R3-CD**

_____

Defendant, Deddrick Clay, was indicted by the Shelby County Grand Jury for especially aggravated robbery and for being a convicted felon in possession of a firearm. Following a jury trial, Defendant was convicted of especially aggravated robbery and found not guilty of the firearm possession charge. Following a sentencing hearing, Defendant was sentenced to serve 22 years incarcerated. Defendant's sole issue on appeal is whether the evidence was sufficient to support his conviction. Having reviewed the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Jason M. Matthews, Memphis, Tennessee (on appeal) and Stephen C. Bush, District Public Defender; and Jennifer Johnson Mitchell, Assistant Public Defender, Memphis, Tennessee (at trial) for the appellant, Deddrick Clay.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Amy P. Weirich, District Attorney General; and Kevin McAlpin and Leslie Byrd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Evidence presented at trial*

On October 31, 2014, Joshua Hearn was working as an assistant manager at the Family Dollar store on Park Avenue in Memphis. He testified that Defendant, who had been waiting in the checkout line, approached the counter with a box of laundry detergent

and demanded that Mr. Hearn give him money from the store's safe. Mr. Hearn testified that he "thought it was a joke at first," but he noticed that Defendant was sweating, and he realized Defendant was serious. Mr. Hearn noticed that Defendant's hand was in his pocket, which made him believe that Defendant was armed. Instead of entering the code to open the safe, Mr. Hearn entered the code to call police. He testified that Defendant became impatient and "came around the corner [and] hit [him] with . . . something in his hand." Mr. Hearn was able to get out of the store. From outside the store, Mr. Hearn saw Defendant "slam[ ] the cash register and [take] all of the money out."

Mr. Hearn did not know exactly what the object was that Defendant hit him with. He testified that "[i]t looked like the bottom of a gun, like the handle part." He testified that Defendant hit him more than once. He testified that part of his face was "shattered" and that he "had to wait a couple of months [to] let it heal on its own." He testified that the injury was "most definitely painful" and that he wore a patch over his eye for one month. At the time of trial, almost four years after the incident, Mr. Hearn still could not fully open the eye as much as it opened prior to the assault. Mr. Hearn testified that Defendant "didn't just str[i]ke [him] with [his] hand. He had something in his hand." Mr. Hearn estimated that Defendant took around $200 from two registers.

Shanara Vester was also working at the store. Ms. Vester was unaware that anything was happening until another employee, Nicole Taylor, squatted down beside her. Ms. Vester saw Defendant hit Mr. Hearn "more than once." Ms. Vester estimated that there was $150 in her register. Ms. Taylor testified that she heard Defendant tell Mr. Hearn that he was going to rob the store, and she called the police. Ms. Taylor also saw Defendant hit Mr. Hearn. On cross-examination, Ms. Taylor acknowledged that she did not see a weapon.

Officer Rufus Potts, of the Memphis Police Department, responded to a robbery call at the store. Officer Potts obtained security video of the incident. The video was admitted as an exhibit and shown to the jury. Officer Sam Blue, of the Memphis Police Department's Crime Scene Investigation Unit, took photographs and collected evidence from the crime scene. He lifted fingerprints from the box of laundry detergent. Nathan Gathright, a latent print examiner with the Crime Scene Investigation Unit, determined that the fingerprints belonged to Defendant.

Defendant did not testify or present any other evidence.

*Analysis*

Defendant challenges the sufficiency of the evidence, asserting specifically that the State failed to show that Defendant accomplished the especially aggravated robbery

with the use or display of a deadly weapon. When a defendant challenges the sufficiency of the evidence, this court is obliged to review that claim according to certain well-settled principles. The relevant question is whether *any* rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)).

Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id*. The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Our criminal code defines especially aggravated robbery as follows: "Especially aggravated robbery is robbery as defined in [section] 39-13-401: (1) Accomplished with a deadly weapon; and (2) Where the victim suffers serious bodily injury." T.C.A. § 39-13-403(a). Robbery as defined in Tennessee Code Annotated section 39-13-401 is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id*. § 39-13-401(a). Serious bodily injury means bodily injury involving a substantial risk of death, protracted unconsciousness, extreme physical pain, protracted or obvious disfigurement, or protracted loss or substantial impairment of a function of a bodily member or organ. *Id*. § 39-11-106(a)(34).

In *Morgan v. State*, the Tennessee Supreme Court classified weapons which may be considered deadly into two categories: weapons which are deadly per se, such as firearms, and weapons which are deadly "by reason of the manner in which they are used." *Morgan v. State*, 415 S.W.2d 879, 882 (Tenn. 1967) (concluding that a hard object wrapped in a sock and used as a bludgeon or club was a deadly weapon). In *State v. McGouey*, the court clarified that "[i]f an item is not a deadly weapon per se, it will

only be considered a deadly weapon under subsection B *if the defendant in a particular case actually used or intended to use* the item to cause death or serious bodily injury." *State v. McGouey*, 229 S.W.3d 668, 673 (Tenn. 2007) (concluding that an unloaded pellet gun was not used by the defendant as a deadly weapon) (emphasis in original). Tennessee courts have concluded that many objects which are not inherently dangerous nevertheless satisfy the definition of a deadly weapon. *See State v. Downey*, 259 S.W.3d 723, 738 (Tenn. 2008) (flashlight used to hit victim on the head, resulting in a month-long hospital stay was a deadly weapon); *State v. Madden*, 99 S.W.3d 127, 137 (Tenn. Crim. App. 2002) (pointed-toe cowboy boots were a deadly weapon); *State v. Eaves*, 959 S.W.2d 601, 604 (Tenn. Crim. App. 1997) (plastic pen used in stabbing to inflict a puncture wound was a deadly weapon); *see also State v. Alvin Phillips*, No. M2009-02320-CCA-R3-CD, 2011 WL 2174909, at *3 (Tenn. Crim. App. May 31, 2011) (metal folding chair used to hit victim in the face, coupled with death threats, constituted deadly weapon), *perm. app. denied* (Tenn. Sept. 21, 2011); *State v. Anthony D. Forster*, No. M2002-0008-CCA-R3-CD, 2011 WL 1431980, at *10 (Tenn. Crim. App. Apr. 12, 2011) (heavy cordless phone which defendant used to hit victim in the face, leaving a scar, was a deadly weapon), *perm. app. denied* (Tenn. Aug. 24, 2011); *State v. Billy Ratcliffe*, No. 01C01-9103-CC-00068, 1992 WL 57589, at *2 (Tenn. Crim. App. Mar. 26, 1992) (a "rat tail" hairbrush with a sharp end was a deadly weapon), *perm. app. denied* (Tenn. Aug. 31, 1992).

The evidence at trial showed that Defendant approached Jason Hearn and demanded that he open the store's safe and give him money. Mr. Hearn testified that Defendant had his hand in his pocket, leading him to believe that Defendant was armed. Defendant became impatient waiting for Mr. Hearn to open the safe, and he came around the counter and struck Mr. Hearn in the face "more than once." Mr. Hearn saw an object in Defendant's hand that looked to him like the handle of a gun. Mr. Hearn suffered painful injuries to one side of his face, which he testified was "shattered," and his injuries took two months to heal. The evidence is sufficient to support Defendant's conviction. Defendant is not entitled to relief.

CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

- 4 -